JgLOLLEY, J.
The defendant, Henry A. Dykes, Sr. (“Dykes”), was charged by bill of information with three counts of sexual battery of the juvenile A.G., in violation of La. R.S. 14:43.1(A)(1). After a trial by jury, Dykes was found guilty as charged. He was sentenced to serve ten years at hard labor without benefit of probation, parole or suspension of sentence on each count. Count two was ordered to run consecutively with count one, and count three was ordered to run concurrently with counts one and two. The defendant appeals his conviction and sentence. For the following reasons, we affirm.
FACTS
Dykes lived with Earlene Green (“Green”) for several years, including the time period between January 1, 2001, and July 31, 2001, during which time Green regularly babysat her grandchildren for her daughter-in-law, Tiffany Green, (“Tiffany”). The grandchildren included the victim, A.G. (born on April 11, 1996), and her two brothers. A.G. referred to the defendant as “Poppa” or “Poppa Henry.”
In late July 2001, Tiffany observed A.G. place two fingers between her brother’s legs and begin to “rub.” When questioned by her mother, A.G. stated that she was doing “what Poppa did every time she sat on his lap.” A.G. explained to her mother that when she sat on Poppa’s lap he put his fingers under her panties and rubbed. Tiffany and her husband took A.G. to pediatrician Barry Ricks, M.D. (“Dr.Ricks”) the next day. Dr. Ricks’ office alerted the Ouachita Parish Sheriffs Office, and A.G. *910 was interviewed by Detective Jay Eller-man (“DetEllerman”) a couple of days thereafter. | .¡During this interview, A.G. placed a mark on the vagina of an anatomical drawing to show where Dykes touched her.
A.G.’s parents contacted L.M., one of Dykes’ two adult daughters. A subsequent investigation revealed that he fondled his daughter, L.M., beginning when she was eight years old until she turned fifteen. Dykes would touch L.M.’s vagina with his hand when she sat in his lap to watch television and when she sat next to him in the car. The abuse ended when L.M. told her mother about the abuse, which was not reported to the authorities.
Dykes was subsequently interviewed by Det. Ellerman during the course of his investigation in August 2001. After being advised of his Miranda rights, Dykes admitted to Det. Ellerman and Detective Jay Via (“DetVia”) that he fondled the victim on several occasions by placing his hand inside the victim’s underwear and rubbing her vagina. The most recent acts Dykes could remember occurred within a six-month period of time. Dykes even stated that one act occurred on a Tuesday at the end of July. He described three separate acts to the officers, and approximated that the fondling acts lasted about 15 to 25 seconds. He admitted that the fondling occurred while the victim sat on his lap in the recliner. Dykes also admitted that the fondling, sexually aroused him and brought back memories of molesting his adult daughter, L.M., when she was a child. However, he denied ever fondling his other daughter, L.J. Dykes’ statement was freely and voluntarily given, but he refused to give a recorded statement. After his statement, Dykes was arrested.
|4Pykes was charged by bill of information with three counts of sexual battery. Subsequently, the state filed two notices of intent to use evidence of other crimes in accordance with State v. Prieur, 277 So.2d 126 (La.1973), and a motion for a Prieur hearing. One notice alleged that the evidence of other crimes was admissible under La. C.E. art. 412.2 to prove that defendant committed similar crimes of sexual assault. The other alleged that the evidence of other crimes was admissible under La. C.E. art. 404(B) to prove defendant’s motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
At the Prieur hearing, the state sought to determine whether evidence was admissible under La. C.E. art. 412.2, as well as to determine, in the alternative, whether evidence was admissible under La. C.E. art. 404(B). The trial court granted the state’s motion to introduce evidence of other crimes. It found clear and convincing evidence through the. testimony of the defendant’s adult daughter, L.J., and the stipulation of his other adult daughter L.M., that the defendant committed acts of sexual fondling when the women were children. The court found that the evidence was admissible because it shows lack of accident, and possibly because it shows motive and other “independent means of relevancy.” It held that the probative value outweighed the prejudicial effect for the same reasons set forth in State v. Jackson, 625 So.2d 146 (La.1993), and limited the evidence to “nothing beyond” genital fondling. The court also found that there had been an adequate showing under Prieur of the notice of intent to use the prior sexual acts of the defendant. The court further held that the use of the evidence of | ¡¡similar crimes was admissible under La. C.E. art. 412.2 and that the article is procedural in nature and may be applied retroactively without violating the provisions against ex post facto laws.
*911 Regarding the trial court’s ruling, Dykes filed an application for supervisory review with this court and by an order signed March 28, 2002, this court denied his writ, stating:
The evidence of other crimes is admissible under La. C.E. art. 404(B) to prove a plan to systematically engage in nonconsensual relations with young females as they mature physically. State v. Jackson, 625 So.2d 146 (La. 1993). “In addition, La. C.E.art. 412.2 apparently allows this evidence to be admissible.”
The trial of the matter proceeded, at which time the facts set forth herein-above were admitted into evidence. The state presented the trial testimony of A.G., and her mother, Tiffany. A.G. identified Dykes as “Poppa,” and related that when she was at Green’s house, she would sit in Poppa’s lap and he would touch her “private” inside her underwear, indicating her vagina. Dykes’ age at trial (63) and date of birth (September 10, 1939) were stipulated at trial.
L.M., who was forty-two years old at the time of trial, related the details of her father’s sexual abuse. L.J., the defendant’s other adult daughter, who was 38 years old at the time of trial, testified that the defendant fondled her vagina with his hand when she was a child. The abuse started when L.J. was about 5 years old and ended when she was about age 15 when she told her mother. The abuse was never reported to the police. L.J. also testified that she had observed the defendant fondling her sister, L.M., when L.M. was a child. At trial, Det. Ellerman and Pet. | fiVia related the details of their investigation, including the interviews with A.G. and Dykes.
Additionally, the defense presented the trial testimony of A.G.’s teacher, Tanya Head (“Head”). She observed A.G. in kindergarten performing acts that had sexual connotations. These acts included touching other children “in their privates” and masturbation. Head also related that A.G. was very withdrawn during this time. At the conclusion of the trial, the defendant was convicted of all three counts of sexual battery.
A sentencing proceeding subsequently was held at which time the trial court meticulously set forth its reasons for sentencing in accordance with La. C. Cr. P. art. 894.1. The pre-sentence investigative report was noted, as was Dykes’ social and work history. The immense impact of the crimes on the young victim and her family was discussed, as evidenced by a letter to the court from the victim’s family. Also noted was the impact of the sexual abuse on Dykes’ own two daughters. In mitigation, the trial court considered Dykes’ health, income, age and lack of prior felony convictions. He was then sentenced to serve 10 years at hard labor without benefit of probation, parole or suspension of sentence on each count. Count two was ordered to run consecutively with count one, and count three was ordered to run concurrently with counts one and two. As an aggravating circumstance in support of imposition of the two consecutive sentences, the trial court noted Dykes’ attempt to repudiate his confession. The trial court stated that it would not sentence Dykes to 30 years (that is, three consecutive 10-year ^sentences) because of his health and circumstances. Dykes’ oral motion to reconsider sentence was denied, and he now appeals.
DISCUSSION
In his first assignment of error, Dykes argues that the trial court erred when it ruled admissible alleged other crimes evidence that Dykes had previously molested his two daughters.
*912 The state concedes that a decision that was considered by supervisory writ can be considered on appeal, citing State v. Sharp, 35,714 (La.App.2d Cir.02/27/02), 810 So.2d 1179, writ denied, 2002-1736 (La.06/06/03), 845 So.2d 1081. However, the state contends that the record supports this court’s previous ruling that the other crimes evidence was admissible. In State v. Sharp, supra, this court reiterated the standard of review as stated by the Louisiana Supreme Court in State v. Humphrey, 412 So.2d 507 (La.1981):
When this court considers questions of admissibility of evidence in advance of trial by granting a pretrial application for supervisory writs (rather than deferring judgment until an appeal in the event of conviction), the determination of admissibility does not absolutely preclude a different decision on appeal, at which time the issues may have been more clearly framed by the evidence adduced at trial. Nevertheless, judicial efficiency demands that this court accord great deference to its pretrial decisions on admissibility, unless it is apparent, in light of the subsequent trial record, that the determination was patently erroneous and produced an unjust result •...
Because of the state’s concession, this court is therefore not faced with the issue of whether defendant is barred from raising this issue on appeal, but rather whether defendant’s first assignment .of error has merit. In that regard, Dykes specifically argues that the trial court erred when it |sruled that Article 412.2 of the Louisiana Code of Evidence should be applied retroactively to his case and that it did not violate the constitutional prohibition against ex post facto laws.
A review of the subsequent' trial record, however, reveals no additional evidence regarding the admissibility issue of Dykes’ prior crimes evidence that is patently erroneous or that would produce an unjust result. After careful review of the record, we concur with this court’s rationale when it previously denied Dykes’ writ in this case on the basis that the evidence of other crimes is admissible under La. C.E. art. 404(B) to prove a plan to systematically engage in nonconsensual relations with young females as they mature physically. See State v. Jackson, supra. Because we find that the contested evidence satisfies art. 404(B), we therefore pretermit further discussion of defendant’s first assignment of error regarding admission of evidence of other crimes under, the ex post facto application of La. C.E. art. 412.2.
In defendant’s next assignment of error, he contends that the trial court erred in ruling that the probative value of the alleged other crimes evidence out weighed its prejudicial effect. Specifically, he contends that the testimony from Dykes’ two daughters in which they indicated that he previously molested them was nonetheless inadmissible under both articles 412.2 and 404(B), because the probative value of this evidence was substantially outweighed by its unfair prejudicial effect.
For evidence of other, crimes to be admissible, the state must prove with clear and convincing evidence that (1) the other acts or crimes occurred |9and were committed by the defendant, (2) the other acts satisfy one of the requirements of La. C.E. art. 404(B)(1), i.e., motive, intent, knowledge, identity, absence of mistake or accident, and (3) the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, supra.
Foremost, at least one of the enumerated purposes in Article 404(B) “must be at issue, have some independent relevance, or be an element of the crime *913 charged in order for the evidence to be admissible.” State v. Kennedy, 2000-1554 (La.04/03/01), 808 So.2d 916, writ denied, 2002-2088 (La.01/24/03), 836 So.2d 43, citing State v. Jackson, supra, and State v. Ledet, 345 So.2d 474 (La.1977). Additionally, the evidence, even if independently relevant, must be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading of the jury, or by considerations of undue delay or waste of time. La. C.E. art. 403; see also State v. Moore, 278 So.2d 781 (La.1972). Finally, the requirements set forth in State v. Prieur, supra at 130, must be met. State v. Kennedy, supra.
Regarding the probative value/unfair prejudice balancing test in a situation similar to the instant case, the supreme court in State v. Jackson, supra, held:
We find that the time between the other crimes evidence and the offense charged is but one factor to be considered when balancing probative value, prejudicial effect and relevancy. Length of time between the offenses should not exclude otherwise admissible evidence unless the lapse strips the testimony of probative value. While there must be some connection between the crime charged and the other acts or crimes, the mere passage of time will not necessarily defeat admissibility. However, such a determination must be made on a case by case basis taking into account the peculiar facts of hpevery individual case with much discretion given to the trial judge. (Citations omitted.)
In the case at bar, Dykes’ sexually as-saultive behavior on two daughters was virtually identical to that inflicted on A.G. This improper sexual conduct was carried out in a similar manner and all three victims were approximately the same age when the sexual conduct commenced. In all cases, the young children were in defendant’s home and/or in his custody. The similarities warrant admissibility to show the occurrence of a crime through a common design. See State v. Taylor, 36,066 (La.App.2d Cir.06/12/02), 821 So.2d 633, writ denied, 2002-2068 (La.06/20/03), 847 So.2d 1222.
We find the record clearly supports the trial court’s ruling. Although urged by the defense as an important consideration, remoteness is but one factor to be considered in this balancing test. State v. Jackson, supra. Such determination must be made on a case-by-case basis taking into account the particular and peculiar facts of every individual case with much discretion given to the trial judge. The fact that the defendant fondled his adult daughters’ genitalia when they were the victim’s age is neither overly prejudicial nor too remote. We find the trial court properly limited the other crimes testimony to genital fondling and nothing beyond; therefore, we find this assignment of error is without merit.
In defendant’s last assignment of error Dykes contends that his total sentence of twenty years imprisonment with hard labor was cruel, excessive and unusual given his special circumstances. We disagree.
 InThe test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.06/24/98), 715 So.2d 641. The articulation of the factual *914 basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art 894.1. State v. Landos, 419 So.2d 475 (La.1982), State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App.2d Cir. 01/20/88), writ denied, 521 So.2d 1143 (1988).
There is no requirement that specific matters be given any. particular weight at sentencing. State v. Jones, 33,111 (La. App.2d Cir. 03/01/00), 754 So.2d 392, 394, writ denied, 2000-1467 (La.02/02/01), 783 So.2d 385; State v. Callahan, 29,351 (La. App.2d Cir.02/26/97), 690 So.2d 864, writ denied, 97-0705 (La.09/26/97), 701 So.2d 979.
|12Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, Sec. 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480.So.2d 288 (La.1985); State v. Bradford, supra. As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App.2d. Cir.08/20/97), 700 So.2d 541; State v. Walker, supra.
The trial court imposed maximum sentences of ten years imprisonment at hard labor without benefits for the defendant’s convictions of three counts of sexual battery, two of which were ordered to run consecutively. The record more than adequately shows that the trial court was aware of the matters urged by the defense prior to imposing sentence, i.e., the defendant’s age and disabling medical condition. The fact that the defendant has a disability is not persuasive mitigation since his physical difficulties did not prevent him from committing the serious offenses he was found guilty of nor should they be used as an excuse to serve less jail time. State v. Graham, 35,184 (La.App.2d Cir.10/31/01), 799 So.2d 645.
113Moreover, based on this record, it cannot be said that the trial court imposed unconstitutionally excessive sentences upon Dykes, and therefore, we find that the two consecutive sentences are completely justified. Child molesters are amongst the most despicable and egregious of all offenders. When these despicable crimes and Dykes’ punishment are viewed in light of the harm done to society by sexual predators in general, and to this young, innocent victim in particular, his sentences do not shock the sense, of justice. State v. Hogan, supra; State v. Bradford, supra. The defendant’s maximum sentences are totally appropriate.because the instant crimes are the most serious violations of. the offense and Dykes is the worst type of offender. State v. Grissom, supra; State v. Walker, supra. We therefore find this assignment of error to be without merit.
*915 CONCLUSION
For the foregoing reasons, Henry Á. Dykes’ convictions and sentences are- affirmed.
AFFIRMED.