677 So.2d 544 (1996)
STATE of Louisiana, Appellee,
v.
Cory GIPSON, Appellant.
No. 28113-KA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
Rehearing Denied August 15, 1996.
*546 Elton B. Richey, Jr., Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Assistant District Attorney, for Appellee.
Before MARVIN, HIGHTOWER and STEWART, JJ.
HIGHTOWER, Judge.
Found guilty as charged of second degree murder, La.R.S. 14:30.1, by a unanimous jury and sentenced to the mandatory term of life imprisonment, Cory Gipson[1] now *547 appeals his conviction on several grounds. We affirm.

FACTS
Near 11:00 p.m. on November 20, 1993, a green Ford Fairmont driven by Lorenzo Frierson stopped at the intersection of East 66th Street and Southern Avenue in Shreveport. Three young men, Alfonso Williams, Melvin Hudson, and BaDon Draughn, rode as passengers. At that moment, a Ford pickup pulled alongside and a man inside yelled at the occupants of the sedan. Almost immediately too, gunfire erupted from the truck, shattering the glass in the left rear door of the Fairmont.
When one of the bullets struck Frierson in the neck and shoulder, he slumped over the steering wheel. The automobile then proceeded through the intersection, eventually going off the road and hitting a pile of brush in a field. There, the four young men exited the vehicle and returned fire at the escaping pickup. Frierson, bleeding profusely, managed to get fifty yards across the field before he collapsed and died. His companions then fled the scene.
The ensuing police investigation revealed that the Fairmont did not belong to Frierson, but to an individual named Douglas Clark who initially reported the vehicle as stolen. Upon becoming a prime suspect in the shooting, however, Clark informed detectives that he loaned the automobile to the deceased the day before the incident in exchange for two pieces of crack cocaine in a "rent-a-rock" transaction.[2]
Thereafter, when Frierson did not return the Fairmont at the agreed time, Clark decided to go looking for the car. He employed the help of an acquaintance, Joe DeLeon, by telling him the vehicle had been stolen. In DeLeon's Ford truck, the pair picked up Byron Kinsey, and Kinsey's seventeen-year-old friend, Cory Gipson. Kinsey carried a shotgun, while Gipson armed himself with a Ruger .357 magnum revolver.
While searching the Cedar Grove neighborhood of Shreveport, the quartet spotted the Fairmont and pulled alongside at the above-mentioned intersection. Clark, seated at the passenger door, yelled to the men in the green car to stop. Gipson, positioned next to him, immediately fired at least two revolver shots out of the truck window. The occupants of the pickup then quickly departed, possibly unaware that anyone in the Fairmont had actually been struck.
After obtaining the shooter's identity from Clark, the police questioned Gipson, who initially said the individuals in the Fairmont fired first. When he subsequently learned that the other occupants of the pickup had refuted his story, however, Gipson admitted he shot first and that no other person in the truck discharged a weapon. Moreover, he informed authorities where they could recover the revolver, which he had left with a friend. He also showed where he had dumped two spent shell casings.
Charged with the second-degree murder of Frierson, Gipson proceeded to trial on April 17, 1995. After deliberating for nine minutes, the jury returned a verdict of guilty as charged. Following the district judge's denial of motions for new trial and post-verdict acquittal, and upon receiving the mandatory life term of incarceration, defendant appealed. He urges five regular and two supplemental assignments of error.[3]

DISCUSSION

Post-Verdict Judgment of Acquittal
We first address defendant's assignment of error challenging the sufficiency of the evidence. Basically he complains that the trial court denied his post-verdict motion for acquittal filed pursuant to La.C.Cr.P. Art. 821.
The criteria for evaluating the sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that the state proved all elements *548 of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). That standard, initially enunciated in Jackson and now legislatively embodied within La.C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La. 1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
Of course, it is always the function of a judge or jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir. 1992), writ denied. Where a trier of fact has made a rational determination, an appellate court should not disturb it. Id.; State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied. Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Thomas, supra.
Second degree murder is the killing of a human being (1) when the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the "perpetration or attempted perpetration of ... [a] drive-by shooting ..., even though he has no intent to kill or inflict great bodily harm." La.R.S. 14:30.1. A "drive-by shooting" means the discharge of a firearm from a motor vehicle on a public street or highway with the intent either to kill, cause harm to, or frighten another person. La.R.S. 14:37.1.
In the case sub judice, Gipson stated to the police that he had been the only person who shot a gun from the truck, indicating he fired the Ruger .357 revolver when the Fairmont pulled away from the intersection. While saying that he did not take aim, defendant disclosed that he sought to make the other vehicle stop. At trial, he again admitted discharging his weapon at least twice near the sedan.
Equally important, testimony by a ballistics expert linked Gipson's handgun, the Ruger revolver, to a bullet jacket lodged in the victim's clothing. Attempting to discredit that report and his own confession, defendant claimed at trial that he ducked down in the truck after firing the pistol twice, and that someone else must have picked up the weapon to discharge additional shots. Yet, he earlier said he observed the Fairmont go into the field and stop and the passengers exit with guns, events impossible to see from under the dashboard. Moreover, Draughn, a passenger in the Fairmont, testified that the first salvo, occurring at the same time as the yelling, shattered the window and caused Frierson to slump over the wheel.
While Gipson's brief argues that the state did not sufficiently prove his identity as the shooter, this contention is unconvincing. Granted, several observers thought a man fitting Clark's description fired the weapon. Yet, the shooting occurred well after dark in a dimly lit area and defendant, a black male, wore dark clothing. Obviously too, Draughn could not be certain as to whether one of the white males in the truck fired the gun.
Although, as he turned toward the yelling, Draughn saw a gun pointed out the window and later described someone looking like Clark, his view existed only briefly before the shooting caused him immediately to duck down in his seat. In fact, at trial, Draughn admitted he merely presumed the only person he could see, the one in the passenger window of the truck, had pulled the trigger. Undoubtedly, the jury evaluated this witness's questionable identification together with the other evidence, particularly Gipson's double admission.
Gipson twice admitted firing the first shots from the weapon matched by ballistics to the projectile discovered on the deceased victim. Additionally, despite the claim that there had been no intent to injure or kill anyone, the jury could clearly infer an intent to frighten the passengers of the Fairmont. Simply put, when the evidence is viewed in the light most favorable to the prosecution, a rational juror could certainly find defendant guilty of second degree murder beyond a reasonable doubt.

Motion for Continuance
In his first and fifth assignments of error, Gipson complains about the denial of his *549 motion for continuance, filed after the production of a crime laboratory report less than two weeks before trial.
Around March 20, 1995, the police sent Gipson's Ruger revolver to the Northwest Louisiana Crime Lab for ballistics analysis. That organization completed testing on March 29 and issued the district attorney's office a written report, dated April 5, 1995, specifically finding the gun to be the murder weapon. Two days later, the state entered that document into the record and notified defense counsel, by letter, that the report would be used at the trial scheduled for April 17, 1995. Defendant responded with a motion for continuance, alleging "[in]adequate time ... prior to trial to effectively plan trial strategy as a result of this late evidence," and alternatively requesting exclusion of the evidence.
Following a hearing on April 13, 1995, the district court denied the motion, concluding that defendant had not proven the necessity for additional time to prepare. The judge nevertheless indicated he would allow a recess if the need for further rebuttal preparation arose after the introduction of the ballistics report. Trial on the merits began as scheduled. Gipson never requested a recess but objected to the laboratory report at the time of its introduction. On appeal, he maintains that the district court's failure to either grant a continuance or to exclude the firearm evidence produced unfair prejudice. We disagree.
Gipson first argues that the state's "untimely" production of the laboratory report violated its continuing duty of disclosure under the discovery provisions in La.C.Cr.P. Art. 729.3. It is clear, however, that the state filed the challenged document within two days of its receipt and did not attempt any concealment. Moreover, prior to his appeal, defendant made no contention that a discovery violation occurred. Thus, the potential sanctions in La.C.Cr.P. Art. 729.5, including exclusion of the evidence, are not pertinent. Cf. State v. Walker, 394 So.2d 1181 (La.1981); State v. Hooker, 623 So.2d 178 (La.App. 2d Cir.1993).
The decision to grant or to deny a continuance lies within the wide discretion of the trial court. La.C.Cr.P. Art. 712; State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190, cert. denied; State v. Cannon, 26,906 (La. App. 2d Cir. 06/21/95), 658 So.2d 728. Therefore, a district judge's ruling will not be disturbed on appeal absent a showing of abuse and specific prejudice. State v. Cannon, supra; State v. Smith, 25,841 (La.App. 2d Cir. 02/23/94), 632 So.2d 887. The specific prejudice requirement will only be disregarded where the time allowed defense counsel to prepare is so minimal that the "fairness" of the proceeding is questionable. Id.
In the present case, we do not find that defense counsel had such a minimum of time that the fairness of the proceedings should be called into question. Clearly, Gipson had already admitted to the police that he fired the revolver from the pickup and, as corroborated by the other truck occupants, that he had been the only shooter. As revealed by earlier discovery, the police had recovered defendant's weapon as well as the spent cartridges. At the very least, defendant's attorney should have recognized the likelihood of a match between the fatal bullet and the Ruger revolver. Thus, given that other evidence before the report contravened a "multiple shooters" defense, no specific prejudice has been shown. In fact, counsel thereafter utilized the same and only available defense, viz., that another person in the truck actually fired the one murder weapon.
Nor is this the rare case where prejudice is presumed. See generally State v. Cannon, supra. Clearly, the forensic match told defendant nothing that could not be fairly inferred from the existing record. Furthermore, Gipson never requested a recess to obtain an expert to rebut the report or the ballistics specialist's testimony. Thus, with respect to these two assignments, the district court did not err.

Motion for Mistrial
In his second assignment, Gipson complains that the trial court erred in denying his motion for mistrial when the state made reference to gang violence while questioning prospective jurors. We find no merit in this position.
*550 When prejudicial conduct inside or outside the courtroom makes it impossible for a defendant to obtain a fair trial, a mistrial shall be granted upon his motion. La. C.Cr.P. Art. 775. The determination as to whether that provision controls is within the sound discretion of the trial judge, however, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Plater, 26,252 (La.App. 2d Cir. 09/21/94), 643 So.2d 313, writ denied. Mistrial, a drastic remedy, should be ordered only where the defendant has suffered prejudice so substantial as to deprive him of any reasonable expectation of a fair trial. Id. Of course, the purpose of voir dire examination of prospective jurors is to determine their competence and impartiality, and to afford counsel the basis to make challenges for cause and to secure information for the intelligent exercise of peremptory challenges. State v. Lee, 545 So.2d 703 (La.App. 2d Cir.1989).
In the present case, the following colloquy transpired during voir dire:
State: Let me change this up just a little bit. Mr. CrawfordI'll change the order up a little bit. Mr. Crawford, are you familiar with the gang violence in Shreveport?
Juror: Uh-huh.
State: How do you feel about that?
Juror: Well, what do you mean how do I feel?
State: How does it strike you?
Juror: I suppose it's real. I know it's in the schools. I don't know about the violence.
At that point, the court granted a bench conference at the request of defense counsel. Thereafter, the prosecution elicited nothing further regarding gang violence and, instead, began asking the prospective jurors about firearms ownership.
Following the noon recess, defendant moved for a mistrial, citing prejudice from the prosecutor's reference to gang violence. The trial judge, deeming the question to be generic and not focused specifically upon defendant, denied the motion.[4]
We find no error in that denial. The state did not attempt to label defendant as a gang member, but simply sought to determine how the would-be jurors felt about gang violence in general. Such a query seems likely to indicate the "law-and-order" orientation of potential jurors and, thus, help identify those who may or may not look favorably upon the state's witnesses or its theory of the case. Furthermore, as the prosecution asked no more questions of this type, little if any prejudice can be shown.

New Trial Motion
In another assignment, defendant maintains that the trial court erred in denying his motion for new trial.
The new trial motion first asserted the verdict to be contrary to the law and evidence. See La.C.Cr.P. Art. 851(1). In response to that contention, only the weight of the evidence may be reviewed by the district judge. State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993), writ denied, and authorities therein. Moreover, the refusal to grant such a motion is not subject to appellate review. La.C.Cr.P. Art. 858; State v. Robinson, supra. In any event, defendant's position centers around the sufficiency of evidence, an issue that should properly be posed by a motion for post-verdict acquittal. See La.C.Cr.P. Art. 821. Here, of course, such an effort proved unsuccessful as explained above.
Likewise, the other complaints within defendant's motion pertained to issues raised in assignments one, two, and five, all rejected earlier in this opinion. The merits of a new trial effort must be viewed with extreme caution in the interest of preserving the finality of judgments. As a general rule, such a motion will be denied unless injustice has been done. La.C.Cr.P. Art. 851; State v. Robinson, supra. In the present case, the district court properly resolved the matter.

*551 Ineffective Assistance of Counsel

In two supplemental assignments of error, Gipson asserts that he received ineffective assistance from defense counsel. Ordinarily, such claims should more properly be presented by application for post-conviction relief. State v. Pratt, 26,862 (La.App. 2d Cir.04/05/95), 653 So.2d 174, writ denied; State v. Robinson, supra. In the interest of judicial economy, however, the issue may be resolved on direct appeal if the record contains sufficient evidence pertaining to the matter. Id.
In alleging ineffective assistance of counsel, a defendant must satisfy a two-pronged test by showing, first, his attorney's performance to be so deficient as to deny him the "counsel" guaranteed by the Sixth Amendment, and, second, that those errors are so serious as to deprive the accused of a fair trial, i.e., one with a reliable result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail under the Strickland test, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991); Knighton v. Maggio, 740 F.2d 1344 (5th Cir.1984). Also, a reviewing court must give great deference to the trial attorney's judgment, tactical decisions, and strategy, strongly presuming the accordance of reasonable professional assistance. Strickland, supra; State v. Pratt, supra; State v. Robinson, supra; State v. Wry, supra.
Gipson first faults his lawyer for allowing the police detective, Sergeant Price, to relate at trial the declarations of various witnesses interviewed during the investigation leading to Gipson's arrest. In particular, defendant complains that the statements by Clark and DeLeon implicated him as the shooter.
Where an investigating officer testifies concerning events leading to the arrest of a defendant, statements made to him by others are admissible if not offered for the truth of the matter asserted, but merely to explain the officer's actions. State v. Watson, 449 So.2d 1321 (La.1984), cert. denied; State v. McNair, 597 So.2d 1096 (La.App. 2d Cir.1992), writ denied. Yet, as explained in State v. Wille, 559 So.2d 1321 (La.1990), cert. denied, and State v. White, 559 So.2d 541 (La.App. 2d Cir.1990), such statements may in other circumstances constitute impermissible hearsay. Although relevant to determine the state of mind of an officer at a motion to suppress, the assertions of third parties to the police should be excluded at trial when introduced to prove the defendant's guilt. State v. Wille, supra; State v. Haygood, 26, 102 (La.App. 2d Cir. 08/17/94), 641 So.2d 1074, writ denied; State v. McNair, supra; State v. White, supra.
Still, reversal will not be warranted if, on appeal, the court finds beyond a reasonable doubt that the hearsay evidence did not contribute to the conviction. State v. Wille, supra; State v. Haygood, supra; State v. McNair, supra. Similarly, despite the fact that hearsay testimony presents a textbook unprofessional error, such an oversight does not necessarily establish ineffective counsel. The defendant must demonstrate a reasonable probability that, but for that miscue, the outcome of the trial would have been different. State v. Wry, supra. In the case sub judice, because we find any error concerning the hearsay to have been harmless, cf., State v. Haygood, supra, it follows that the exclusion of that testimony would not likely have produced a different result.
As previously indicated, the most damaging disclosure against Gipson is his own confession as being the only shooter. Clark's statements merely agreed with that admission and related facts which Gipson acknowledged to be true. The repetition of DeLeon's assertions to the police is even less detrimental. Unlike Clark, he testified at trial, thus affording ample opportunity for cross-examination. By that process, the jury learned that DeLeon actually turned away before the shooting and merely concluded Gipson fired because he had been the only person in the truck with a pistol. Consequently, in light of the other properly admitted evidence which demonstrated guilt, the hearsay aspect of the ineffective assistance claim fails.
*552 Beyond all that, we are not completely convinced that defense counsel did not deliberately allow much of the hearsay to be heard as part of her trial strategy. Cf. State v. Soler, 93-1042 (La.App. 5th Cir. 04/26/94), 636 So.2d 1069, writ denied. Indeed, during Price's cross-examination the attorney repeatedly sought hearsay. Much of this, as well as that brought out by the state on direct, would later be utilized in closing argument in an effort to convince the jury that someone else fired the fatal shot and that the other passengers in the truck, especially Clark, had implicated Gipson in order to save themselves from prosecution.
Next and finally, Gipson maintains his attorney should have requested that the crime of illegal use of weapons, La.R.S. 14:94, be explained within the jury instructions concerning the responsive verdict of manslaughter. This facet of the ineffective assistance claim again lacks merit.
Under La.C.Cr.P. Art. 803, the trial judge is required to charge the jury as to the law applicable to the case. State v. Toomer, 395 So.2d 1320 (La.1981). Special requested charges, if wholly pertinent and correct, shall be given provided they require no qualification, limitation or explanation. La.C.Cr.P. Art. 807. Any such charge must be supported by the evidence, however, for the trial judge is not required to instruct the jury on abstract principles of law. State v. Toomer, supra.
As stated to the jury here, the responsive verdicts for a charge of second degree murder are: guilty, guilty of manslaughter, and not guilty. La.C.Cr.P. Art. 814(A)(2). Moreover, the trial court read the appropriate manslaughter definition, La.R.S. 14:31(A)(2)(a). Thus, the jury had before it the option of finding defendant guilty of the lesser charge had it decided to do so. Any further charge needed to be submitted, by a party, as a special request under La.C.Cr.P. Art. 807.
Defendant argues that, had a special charge been requested on the criminally negligent discharging of a firearm, a felony under La.R.S. 14:94(A)(B), the jury would have utilized that predicate offense to return only a verdict of manslaughter, La.R.S. 14:31(A)(2)(a). He contends that jurors might have interpreted his gunshots as merely an attempt to get the attention of the Fairmont's occupants. We find this argument untenable.
Gipson fired a .357 magnum revolver only yards away from the victim in, at best, an attempt to get him to stop. Thus, even if one believes Gipson did not aim at the vehicle, the intent to frighten the victim remains clearly proven and satisfies the requisites for a drive-by shooting. See La.R.S. 14:37.1(C). In both his own statement and his trial testimony, defendant admitted that he deliberately fired two shots trying to get the driver of the Fairmont to stop. Thus, the evidence clearly shows that Gipson did not negligently discharge the firearm, as would be required for the special charge argued for in his appeal.
Accordingly, that charge, even if requested in the district court, could correctly have been rejected by the trial judge based on the record before us. Cf. State v. Henry, 449 So.2d 486 (La.1984). Even more certainly, defendant has not demonstrated the probability of a different outcome in that regard. The present case is easily distinguishable from State v. Wright, 598 So.2d 493 (La.App. 2d Cir.1992), where the trial judge failed to list a statutorily mandated responsive verdict in the charge.
In sum, defendant's claims of ineffective assistance do not meet the test pronounced in Strickland. Nor, in light of the overwhelming evidence of guilt, did the jury reach a verdict that is unreliable. Thus, these supplemental assignments are without merit.

CONCLUSION
For the foregoing reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
STEWART, J., concurs and assigns written reasons.
*553 STEWART, Judge, concurring.
I concur with the majority's affirmation of the defendant's conviction and sentence. However, I disagree with the opinion's characterization of part of the ineffective counsel claim.
A careful review of the record makes it clear that trial counsel's failure to object to the impermissible hearsay testimony of Detective Michael Price was not trial strategy but negligence. It can only be concluded that counsel went to "sleep" during the testimony of Detective Price. A major part of Detective Price's testimony consists of repeating statements of other persons which were inadmissable hearsay. Some of it may be considered harmless because the witnesses later testified at the trial. However, Douglas Clark did not testify and the admission of his statements were very damaging. Clark gave two statements to Detective Price, the first in which he lied about his car being stolen and other details. Detective Price testified that once he confronted Clark about his initial statement that Clark told the "truth" in his second statement. However, the record reflects Detective Price mischaracterized the statement of another witness later corrected by that witness' testimony at trial. Because Clark did not testify at trial, the jury did not have an opportunity to measure his veracity, and we will never know whether his statements were mischaracterized. All of this indicates how serious counsel's mistake was.
The hearsay portion of the ineffective counsel claim fails because defendant's own statement to the police and his testimony at trial were much more damaging. I, therefore, agree with the majority that this was harmless error. However, counsel's conduct is not something this court should condone.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, HIGHTOWER, STEWART and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] On the indictment, defendant's name is spelled "Gibson." The substitution of a letter in a proper name conveying practically the identical sound, however, is merely idem sonans and provides a sufficient designation. State v. Bennett, 517 So.2d 1115 (La.App. 1st Cir.1987).
[2] The record reveals that "rent-a-rock" is a street term describing a vehicle, usually an older model of little value, that the owner "informally" leases to others for a limited time, receiving in barter an agreed upon quantity of an illegal drug.
[3] In brief, defendant has specifically abandoned two assignments of error.
[4] While the record reveals that at least one potential witness claimed Gipson had been a gang member, no such evidence came before the jury.