889 So.2d 1237 (2004)
STATE of Louisiana, Appellee
v.
Jeremy ANDERSON, Appellant.
No. 38,718-KA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2004.
*1239 Louis G. Scott, for Appellant.
Jerry L. Jones, District Attorney, Stephen T. Sylvester, Assistant District Attorney, for Appellee.
Before GASKINS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This criminal appeal arises from the Fourth JDC, Parish of Ouachita, the Honorable Benjamin Jones presiding. Defendant, Jeremy Anderson ("Defendant"), was convicted of armed robbery and sentenced to 15 years at hard labor, without benefit of probation, parole or suspension of sentence, *1240 from which he now appeals. For the reasons stated herein, Defendant's conviction and sentence are affirmed.

FACTS
At about midnight on November 20, 1998, Greg Bennett ("Mr.Bennett") and Charles Bush ("Mr.Bush"), who were students at NLU in Monroe, were at a convenience store near campus, sitting in Mr. Bennett's truck. An armed man with a plastic bag over his head approached the truck, pointed a small silver pistol at Mr. Bennett's face and demanded his wallet. When Mr. Bennett initially refused to surrender his wallet, the robber stated, "If you don't give me your wallet, I'm going to blow your brains out." Mr. Bennett handed over his wallet. The two students watched as the robber ran and got into a red or maroon car driven by another man. As the assailants drove away, the students got the license plate number of the car. They immediately drove two blocks to their fraternity house where they called the police.
Mr. Bennett and Mr. Bush were only able to give the Monroe police a limited description of the robber. They described him as a black male[1], approximately six feet, two inches tall, wearing blue jeans and a checkered shirt. A BOLO alert was issued for the car and, a few minutes later, a campus police officer spotted the car driving through campus with three occupants. He conducted a felony stop and arrested the driver, Major Wiley ("Wiley"), and the two occupants, Defendant and John Goods ("Goods").
Monroe Police Department Officer Craig Honeycutt ("Officer Honeycutt") arrived at the scene a few minutes later. He looked into the maroon car and in plain view was a plastic bag with holes in it and a checkered shirt resembling the one described by the students. Officer Honeycutt also saw a chrome-plated pistol sticking out from underneath the backseat. Officer Honeycutt recovered the items from the car and secured them into evidence.
Mr. Bennett and Mr. Bush were brought to the scene where they identified the car, the pistol, the bag and the shirt as belonging to the robber. Mr. Bush stated that he believed Defendant was likely the robber, based on the fact that the robber and Defendant both were wearing blue jeans, and the other two suspects were not. Mr. Bennett was not sure about the clothing of the suspects. Defendant, Goods and Wiley were arrested for armed robbery.
Goods gave a statement to the officers, and later testified at trial, that he, Defendant and Wiley were longtime friends from Franklin Parish. Goods had driven to Monroe for the evening in his stepfather's car and initially went to a friend's house where he was drinking and smoking marijuana. He wound up at Wiley's dorm room, where Defendant was staying overnight. Although not introduced into evidence at trial, a nickname for Defendant was "Snake." The three played video games and continued drinking; and, at this time, Goods testified that Defendant borrowed a pistol from Wiley. He stated that he heard Defendant joking about wanting to go and rob someone.
Goods further testified that Defendant asked to borrow his stepfather's car to go buy more alcohol. Goods refused, but agreed to drive Defendant to the convenience store. He testified that Wiley did not go with them. Once at the convenience store, Goods sat in the car as Defendant stepped out, and, rather than going into the store, pulled out a plastic bag from his pocket with eye and mouth holes cut out of it and put it over his head. He then walked over and pointed the pistol at the students. Goods denied any prior *1241 knowledge that Defendant was going to rob anyone and testified that, during the robbery, he kept shouting out to Defendant, "What the f* *k are you doing?" Defendant took two or three dollars from the student and ran back to Goods' car, where he told Goods to shut up and drive away.
Goods testified that the two drove back to Wiley's dorm room, where Defendant joked at length about the robbery and tried to convince Goods and others to change clothes with him. Goods also testified that, at that point, he was scared and wanted to go back to Winnsboro. With Wiley driving, Defendant sitting in the front-passenger seat and Goods in the backseat, the three left the dorm. Goods stated that Wiley was driving because he was too intoxicated to do so. Goods testified that Defendant went with them for fear that he would tell the police about the robbery that had occurred.
As soon as the trio got out of the parking lot, they were followed by the campus police. Goods testified that Defendant threw the gun, the bag and the jacket onto the backseat and told Goods to wipe off fingerprints. Instead, Goods left the items untouched on the backseat. The three were then pulled over by the campus police and arrested.
Defendant was taken to the police station and advised of his Miranda rights by Officer William Tarver ("Officer Tarver"). Defendant initialed a printed Miranda waiver form by each of the rights to indicate that he understood that particular right and signed at the bottom of the form. Officer Tarver asked Defendant if he wanted to tell his version of the story, to which he agreed. Defendant initially made an unrecorded statement. In a later recorded statement, Defendant was again advised of his Miranda rights; however, this time he denied being involved in the robbery and stated that, earlier that evening, he and Goods left Wiley's room to go to the store and had returned without incident. According to this version of the story, Defendant and Goods asked Wiley to give them a ride back to the store. Officer Tarver testified that Defendant never stated that they were leaving to go to Winnsboro.
At trial, Goods admitted to having pending criminal charges against him in Franklin Parish, together with the still-pending charges in the case sub judice. He denied having made or discussed making any deals for leniency in his two pending cases for testimony against Defendant.
Although Wiley did not testify at trial, Officer Tarver testified, without objection, that Wiley denied knowing anything about the robbery, and originally denied that it was his pistol used in the robbery. He further testified that Wiley later changed his story and admitted that the pistol belonged to him.
On May 20, 2002, the trial court denied a motion to quash[2] by Defendant, finding *1242 the court minutes showed that Defendant had signed and filed several motions to continue, which suspended the time limitation. Defendant objected to the trial court's consideration of the minutes and motions in the record which were not introduced into evidence by the State.
Defendant sought a writ application to this court, which was denied. In denying said writ, this court stated:
Applicant's motion to quash the prosecution, founded on La. C. Cr. P. art. 578, was filed prematurely. See State v. Oliver, 34,292 (La.App.2d Cir.5/9/01), 786 So.2d 317.
By agreement of Defendant, the trial was continued or reset several times until finally commencing on May 5, 2003. On April 28, 2003, Defendant filed a motion to suppress the physical evidence seized during his arrest. The trial court deferred the hearing on this motion until May 6, 2003. During the voir dire, the State made the following statement:
By Mr. Sylvester: There's one word, there's one word that always gets my attention this time of year. And I want to see what y'all think about it, snake. That gets y'all attention this time of year in Louisiana?
By the Reporter: Responses by the jurors were um-huh or yes.
By Mr. Sylvester: Anybody here scared of snakes? Okay. Me too. It's not the best word, is it? Wherever you see the word snake, you immediately start looking around?
By A Juror: Yes.
By Mr. Sylvester: And if you know somebody names [sic] snake, you're looking at them like this too, right?
By the Reporter: Jurors laughed.
By Mr. Sylvester: That's a heck of a nickname to have, isn't it? You all, I'm going to wrap this up.
Defendant filed a motion for mistrial, based on the State's use of the term "snake" in the voir dire. Although the motion did not provide any legal argument, Defendant asserted that this was an improper expression of opinion of the facts during the voir dire. The State argued that its use of the term "snake" came from Goods' statement to the police, that Defendant's nickname was "Snake."
The trial court questioned the State regarding its use of this terminology and established that "Snake" turned out to be Defendant. The trial court concluded that Defendant being nicknamed "Snake" was irrelevant to this case and barred any further use of the term. The trial court subsequently denied the motion.
Prior to the end of trial, Defendant filed a request for a special jury instruction regarding the testimony of an accomplice. Defendant asked that the trial court "give the Judge's handbook instruction on the testimony of an accomplice." The trial court denied Defendant's requested instruction, but did insert language about discrediting the testimony of an accomplice into the court's standard language.
Defendant was found guilty and sentenced to 15 years at hard labor, without benefit of probation, parole or suspension of sentence. The State initially filed a habitual offender bill of information, alleging that, with this conviction, Defendant was a second-felony offender; however, on September 8, 2003, the State dismissed this bill. This appeal ensued.

*1243 DISCUSSION

Defendant argues seven assignments of error in his brief. We have combined some of these assignments and will address each in turn.

Defendant's Motion for Mistrial on May 5, 2003
Defendant argues he was entitled to a mistrial when the State referred to "snakes" during voir dire. The State argues the comment did not warrant a mistrial or an excusing of the entire jury panel.
La. C. Cr. P. art. 419(A) provides, in pertinent part:
A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.
Further, La. C. Cr. P. art. 775 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
The defendant bears the burden of proving the grounds for setting aside the venire. State v. Carmouche, 01-0405 (La.5/14/02), 872 So.2d 1020. The "prejudicial conduct" may include prejudicial remarks made during voir dire. Carmouche, supra; State v. Gipson, 28,113 (La.App.2d Cir.6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402. Mistrial is a drastic remedy, however, that is warranted only when the defendant has suffered substantial prejudice such that he cannot receive a fair trial. Carmouche, supra; State v. Wingo, 457 So.2d 1159 (La.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2049, 85 L.Ed.2d 322(1985). A trial court need not order a new trial absent a showing that comments made by a prospective juror affected other jurors or prejudiced the defendant. State v. Cushenberry, 407 So.2d 700 (La.1981); State v. Hutto, 349 So.2d 318 (La.1977). The determination of whether actual prejudice has occurred lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion. Carmouche, supra; Gipson, supra.
The arrest records in this appeal show that Goods relayed to the Monroe police that Defendant's nickname was "Snake." This court was not provided a complete voir dire; however, it appears to be undisputed that the State only referenced "snakes" once during the voir dire and the term "Snake" never came up again during the trial. Further, the transcript of that statement shows that the State never identified Defendant as a snake or the person nicknamed "Snake."
During the voir dire of the first jury panel, the prosecutor made reference to his fear of snakes and the character of someone that goes by the nickname "Snake." The trial court denied Defendant's motion for mistrial, or, in the alternative, to remove the prospective jurors from the voir dire. Upon Defendant's objection, the trial court quickly barred the further use of the term, correctly finding it of no relevance to the facts needed to be proven at trial.
Accordingly, Defendant failed to meet his burden of proving that he suffered any substantial prejudice preventing him from receiving a fair trial per our discussion of Carmouche, supra, or Gipson, supra. As such, we find no merit in this argument.

*1244 The Trial Court Erred by Denying Defendant's Motion to Suppress on May 6, 2003 and in Finding That the Statement of Defendant was Free and Voluntary.

Defendant next argues that the Monroe police obtaining an unrecorded statement prior to the official recorded one rendered his earlier statement involuntary. By way of contrast, the State argues that both of Defendant's statements were made freely and voluntarily.
La. R.S. 15:450 provides, in pertinent part:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
La. R.S. 15:451, provides, in pertinent part:
Before what purposes [sic][3] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.
A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Normandin, 32,927 (La.App.2d Cir.12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550; State v. Williams, 98-1006 (La.App. 5th Cir.3/30/99), 735 So.2d 62, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Roddy, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, 00-1427 (La.5/11/01), 791 So.2d 1288. Before the state can introduce into evidence an inculpatory statement made while in police custody, it bears the heavy burden of establishing that the defendant received a Miranda warning and that the statement was freely and voluntarily made, and not the product of promises, threats or duress. La. C. Cr. P. art. 703; La. R.S. 15:451; State v. Johnson, 36,014 (La.App.2d Cir.6/12/02), 821 So.2d 652.
The admissibility of a confession is a question for the trial judge whose conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility should not be overturned on appeal unless they are not supported by the evidence. State v. Richardson, 33,272 (La.App.2d Cir.11/1/00), 779 So.2d 771, writ denied, 00-3295 (La.10/26/01), 799 So.2d 1151. We place great weight upon the trial court's factual determinations because of that court's opportunity to observe witnesses and assess credibility. Roddy, supra.
In these two assignments of error, Defendant argues it was error to allow the use of the unrecorded statements he made after receiving Miranda warnings, but before making his recorded statement.[4] Defendant filed two motions to suppress. The first, filed October 19, 1999, addressed *1245 suppression of statements. It was heard on January 5, 2000, during which the motion was taken up, argued and denied.[5] During the May 6, 2003 hearing, however, the trial court specifically found that, in the January 5, 2000 hearing, all statements made by Defendant, after his Miranda warnings, at the time of his arrest were admissible for use at trial  specifically including any unrecorded statements made before the recorded statement.
The trial court precluded Defendant from raising the issue of statements in his new motion to suppress hearing, finding that the issue had already been litigated. The May 6, 2003 hearing was limited to the suppression of physical evidence found in the car during the arrest. The trial court denied Defendant's motion, finding the evidence to be admissible for use at trial.
The trial court then ordered a free and voluntary hearing on Defendant's statements. In this hearing, Officer Tarver testified to advising Defendant of his Miranda rights at the time of arrest, and Defendant subsequently making an oral statement to him before his official recorded statement. Later, in the recorded statement, Defendant denied making the prior unrecorded statement, claiming his memory was bad.
Defendant also testified at the free and voluntary hearing and did not dispute that he had been given his Miranda warnings. Instead, Defendant asserted that he never made the unrecorded statements. The trial court ruled that Defendant's statements were given freely and voluntarily, and, accordingly, admissible at trial.
In the case sub judice, the State established that Defendant had been advised of his Miranda rights immediately after his arrest. Defendant testified at the hearing and did not dispute having been fully advised of said rights at the time of arrest, nor did Defendant assert that he did not understand these rights. Thereafter, Defendant freely gave a statement about having been to the convenience store at issue earlier in the evening with Goods. Accordingly, this assignment is without merit.

The Trial Court Erred by Admitting the Testimony of Goods and by Failing to Order the State to Reveal all Agreements Between Goods and the State.
Defendant next argues that the trial court erred in admitting Goods' testimony in violation of his due process rights. Louisiana jurisprudence generally holds that an accomplice is qualified to testify against a co-perpetrator, even if the prosecution offers him inducements to testify; such inducements would merely affect the witness' credibility. State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mitchell, 35,970 (La.App.2d Cir.5/8/02), 818 So.2d 807.
Defendant argues that, because Goods testified that he expected nothing for his testimony, the State deprived Defendant of exculpatory material to impeach the testimony of Goods. The State argues that Goods testified that he made no plea agreement of any sort with the State in exchange for his testimony and that the State never offered any such deal to Goods.
Defendant only provided one paragraph of argument to buttress these assignments of error. In his brief, Defendant stated:
During trial, John Goods was allowed to testify as if he expected nothing for his testimony. The defense was therefore deprived of valuable impeachment material. The State is required to disclose *1246 to the defendant any relevant exculpatory material in its possession or control. The rule also encompasses evidence which may impeach credibility of a witness whose testimony may be determinative of guilt or innocence. (Citation omitted).
No further argument was given in support of this assignment of error.
La. C. Cr. P. art. 718 provides, in pertinent part:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or ...
Due process requires the disclosure of evidence that is both favorable to the accused and material either to guilt or to punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Bailey, 367 So.2d 368 (La.1979). There is no distinction between exculpatory evidence and impeachment evidence; and, in Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court extended the Brady rule to cases in which any evidence adversely affecting the credibility of government witnesses is withheld from the defense. The prosecution's duty to disclose exculpatory evidence applies whether there has been a specific or a general request for discovery, as well as when there has been no request at all. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Where such information is not disclosed and it is material in the sense that its suppression undermines confidence in the outcome of the trial, then constitutional error occurs and the conviction must be reversed. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Giglio, supra. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Bagley, supra.
For purposes of Brady's due process rule, a reviewing court, in determining materiality of evidence, must also ascertain "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Further, the defendant must show that "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable." State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819.
In the case sub judice, Goods consistently stated that he had not made or discussed the prospect of a deal with the State for leniency in the armed robbery charges, or his pending charge in Franklin Parish, in order to testify against Defendant. Instead, Goods stated that the reason he was testifying was to clear his name because Defendant "tried to turn everything on" him. A thorough review of the record shows nothing to support the contention that Goods either made a deal with the State, or that the State has withheld information regarding the same. Instead, the allegations are based on mere speculation and conjecture that such a deal, or expectation of a deal, existed.

*1247 The Trial Court Erred by Failing to Give the Instruction Requested by the Defense.

Defendant next argues that the trial court erred in refusing to use a requested jury instruction. By way of contrast, the State argues that the trial court accommodated Defendant's request by amending the standard language.
La. C. Cr. P. art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Before the conclusion of trial, Defendant made the following request for a jury instruction:
If you find that any person who has testified in this matter has identified himself as an accomplice to the defendant in the crime charged against defendant, you must consider the weight and consideration you give such testimony. The consideration of such testimony must be received with care and caution.
If you find that an accomplice has testified and that accomplice reasonably expects that he will benefit from such testimony, whether he has been made a specific promise or whether he reasonably expects not to be prosecuted for the crime he has committed, you must view the testimony of any such accomplice with a jaundiced eye and give such testimony such weight as you think it deserves, if any.
(Alternatively, to the above instruction, the Court is requested to give the Judge's handbook instruction on the testimony of an accomplice.)
The trial court denied Defendant's requested jury instruction. Instead, the trial court modified its general instructions regarding "bias, prejudice  discrediting testimony" to read as follows:
The testimony of a witness, including the testimony of a codefendant or accomplice, may be discredited by showing that the witness will benefit in some way by the defendant's conviction or acquittal, that the witness is prejudiced or that the witness has any other reasons or motive for not telling the truth. (Language added underlined.)
The record shows that, after the trial court ruled that it would amend its general charge to include "including the testimony of a codefendant or accomplice," Defendant's counsel stated:
To a certain extent that language is what I was looking for. But, I guess to reserve it, because I haven't read the cases, I need to note the objection.
In State v. Timon, 28,747 (La.App.2d Cir.10/30/96), 683 So.2d 315, writ denied, 692 So.2d 1081 (La.1997), this court dealt with a similar issue regarding requested jury instructions and stated:
A requested special jury charge need not be given if it is included in the general charge or in another special jury charge. La. C. Cr. P. art. 807. The trial court did not err in refusing to give defendant's requested jury instructions because the concepts were included in his general charge. If the trial court were to have given the requested instruction it would have been repetitive.
*1248 In the case sub judice, the language added by the trial court included the requested principle of law regarding testimony of accomplices raised by Defendant in his proposed instruction. Accordingly, the trial court did not err in refusing Defendant's requested jury instruction verbatim because the equivalent legal concept was included in the trial court's amended general charge.

The Trial Court Erred by Failing to Grant Defendant's Motion to Quash Based Upon Time Limitations.
Defendant argues that the trial court erred in denying his motion to quash. We disagree.
La. C. Cr. P. art. 578 provides, in pertinent part:
Except as otherwise provided in this Chapter, no trial shall be commenced:
1) In capital cases after three years from the date of institution of the prosecution;
(2) In other felony cases after two years from the date of institution of the prosecution; and
La. C. Cr. P. art. 580 provides:
When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial.
This court, in a writ application, has already determined that Defendant's time limitation claim is without merit. See Anderson, supra. Defendant has provided no new facts or argument to support this court changing its position.
The facts show that, on November 29, 1998, Defendant was arrested; and, on December 3, 1998, before the State filed a bill of information, Defendant filed a motion for a preliminary examination. The filing of the motion stopped the accrual of the time limitation for prosecution until the motion was resolved, even though it was filed before the filing of a bill of information. State v. Oliver, 34,292 (La.App.2d Cir.5/9/01), 786 So.2d 317.
The preliminary examination was heard on October 13, 1999. Six days later, Defendant filed a motion to suppress, again stopping the accrual of the time limitation. State v. Harris, 29,574 (La.App.2d Cir.5/7/97), 694 So.2d 626; State v. Evans, 627 So.2d 664 (La.App. 2d Cir.1993). The motion to suppress was heard and denied on January 5, 2000.
The record also shows that, on at least three occasions, May 1, 2000, April 30, 2001, and July 2, 2001, Defendant filed joint motions to continue the trial of the matter, together with passing various hearing dates. A joint motion for continuance suspends the period of the time limitation under La. C. Cr. P. art. 580. State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284.
Defendant argues that the trial court could not consider these joint motions to continue because the State did not introduce them into evidence at the hearing on the motion to quash; however, Louisiana jurisprudence has clearly held that a court can take judicial notice of its own proceedings in the same action. LaForge v. LaForge, 26,317 (La.App.2d Cir.1/25/95), 649 So.2d 151; Fontana v. Fontana, 426 So.2d 351 (La.App. 2d Cir.1983), writ denied, 433 So.2d 150 (La.1983); Lee v. East Baton Rouge Parish School Board, 623 So.2d 150 (La.App. 1st Cir.1993), writ denied, 627 So.2d 658 (La.1993); Chrysler Credit Corporation v. Henry, 221 So.2d 529 (La.App. 4th Cir.1969). This assignment is, therefore, without merit.

*1249 CONCLUSION

For the reasons set forth herein, the conviction and sentence of Defendant, Jeremy Anderson, are affirmed.
AFFIRMED.
NOTES
[1] The race was primarily based on seeing the robber's hands.
[2] One of Defendant's assignments of error relates to a motion to quash for untimely prosecution. The following is a chronology of relevant dates in the case sub judice:

 November, 20 1998  Defendant arrested.
 December 3, 1998  Defendant files a motion for preliminary examination.
 January 4, 1999  State files a bill of information.
 April 6, 1999  Defendant consents to passing the hearing on his motion.
 October 13, 1999  Preliminary examination held.
 October 19, 1999  Defendant files a motion to suppress the statements.
 October 26, 1999  Defendant and State file a joint motion to continue the trial.
 January 5, 2000  Hearing on Defendant's motion to suppress. Motion denied.
 May 1, 2000  Defendant and State file a joint motion to continue the trial.
 April 20, 2001  Defendant and State file a joint motion to continue the trial.
 July 2, 2001  Defendant and State file a joint motion to continue the trial.
 July 3, 2001  Defendant files a motion to quash for untimely prosecution.
 August 30, 2001  Joint motion to reset hearings to December 17, 2001.
 April 22, 2002  Hearing on motion to quash.
[3] Should be "purports." The supreme court, in quoting the section, has, at least twice, inserted "[purports]" following "purposes." See State v. Joseph, 217 La. 175, 46 So.2d 118 (La.1950); State v. Lanthier, 201 La. 844, 10 So.2d 638 (La.1942).
[4] It appears that Defendant has confused his motions to suppress in his brief. Defendant argues there was error in the trial court's May 6, 2003 hearing on his motion to suppress. This hearing involved the issue of suppression of physical evidence seized during the arrest, not suppression of statements.
[5] The transcript of the hearing on this motion is not in the record.