799 So.2d 645 (2001)
STATE of Louisiana, Appellee,
v.
Leroy GRAHAM, Appellant.
No. 35,184-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
*647 Louisiana Appellate Project by Amy C. Ellender, Baton Rouge, Counsel for Appellant.
*648 Leroy Graham, In Proper Person, Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Michael Wayne Powell, Assistant District Attorneys, Counsel for Appellee.
Before BROWN, WILLIAMS and KOSTELKA, JJ.
KOSTELKA, J.
A unanimous jury convicted Leroy Graham ("Graham") of two counts of distribution of cocaine and one count of possession of cocaine with intent to distribute. La. R.S. 40:967. In response to a motion for post verdict judgment of acquittal, the trial court reduced the conviction for possession of cocaine with intent to distribute to possession of cocaine. Graham was sentenced to concurrent sentences of fifteen and twenty years at hard labor, the first five years without benefits, on the two distribution convictions and to five years at hard labor on the possession conviction. After the trial court denied his timely motion to reconsider sentence, Graham instituted this appeal contesting two of his convictions and the three imposed sentences. We affirm.

FACTS
On May 17, 1999, undercover Caddo Parish Sheriff's officer, Michelle Rainwater ("Rainwater"), accompanied by a confidential informant, was greeted by two black females at the door of Graham's house on Nevada Street in Shreveport, Louisiana. Upon encountering Graham inside the house, Rainwater asked him for a "forty" (forty dollars worth of crack cocaine). Graham left the room but returned stating that he only had $35 worth (.2 grams) of what field and laboratory tests later determined to contain crack cocaine. About thirty minutes after the buy, Rainwater was shown a Caddo Parish Sheriff's Office photograph of Graham from which she identified him as the seller of the cocaine. Although Rainwater was wearing a recording device during the transaction, weather conditions prohibited an audible transmission.
On May 27, 1999, Rainwater went alone to Graham's home for a second visit. After viewing Graham in the doorway of his house, Rainwater asked him if he remembered her and he said he did. Graham inquired as to what Rainwater wanted and she once again asked him for a "forty." Because Graham had to go down the street to get the drugs, he invited Rainwater into his home. While Rainwater waited for Graham for approximately two minutes, she conversed with two small children who were in the house. When Graham returned, he told the two children to leave the room. Thereafter, he placed a large rock of crack cocaine on the table and split it into two pieces. Graham asked Rainwater to break off a piece of the crack and smoke it with him. Rainwater declined, explaining that one-half of the drugs were for someone else; instead, she gave him five dollars. Once again, Rainwater wore a wire and the transaction was recorded although the tape was rather distorted. Field and laboratory tests confirmed the substance Rainwater purchased contained cocaine.
On May 28, 1999, numerous sheriff's deputies executed search and arrest warrants for Graham and his home. When the sheriffs van pulled up to the residence, there were an estimated ten to fifteen men standing in the front yard. As the van door opened, at least one of the men ran. Deputies found and arrested Graham inside the residence. At the arrest scene, Rainwater again identified Graham as the individual who sold her the cocaine in the *649 earlier buys. A small amount of crack cocaine and a crack pipe were found in Graham's underwear. Gas and electric bills for the residence in the name of Graham were also recovered. A search of the front yard of the residence also disclosed two small plastic boxes containing 5.1 grams of a substance that contained crack cocaine.

DISCUSSION
On appeal,[1] Graham contends that the testimony of Rainwater was insufficient to convict him as the perpetrator of the two counts of distribution of cocaine.[2]
The standard of appellate review for a sufficiency-of-the-evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When the defendant claims that he is not the person who committed the crime, the Jackson rationale requires that the state negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Hunter, 33,066 (La.App.2d Cir.09/27/00), 768 So.2d 687. To convict Graham of distribution of cocaine, the state was required to prove beyond a reasonable doubt that he knowingly and intentionally distributed the cocaine. State v. Seay, 521 So.2d 1206 (La.App. 2d Cir.1988).
Specifically, Graham argues that Rainwater's inexperience as an undercover officer, without corroborating evidence, created a reasonable doubt as to Graham's identity as the seller of the drugs.
Clearly, the only evidence of identification in this case was Rainwater's recognition of Graham as the perpetrator of the offenses. Rainwater testified that she had two encounters with Graham at his home during which he sold her crack cocaine. At that time, she engaged in conversation with him and had ample opportunity to view his physical features. Shortly after the first buy on May 17, 1999, Rainwater identified Graham from a Caddo Parish Sheriff's Office photograph as the seller of the cocaine.[3] From the audio recording of the second buy, Rainwater identified her and Graham's voices. On her third visit to Graham's home, Rainwater again identified him as the individual who had twice sold her crack cocaine. At trial, Rainwater identified Graham without hesitation.
Of course, the testimony of a single undercover officer who made the drug purchase is sufficient to convict an accused charged with distribution of drugs. State v. Caldwell, 32,377 (La.App.2d Cir.09/22/99), 742 So.2d 91. Certainly, Rainwater's unequivocal identification of Graham, if believed by the jury, was sufficient to negate any reasonable probability of misidentification. Obviously, the jury accepted Rainwater's testimony as credible, despite its knowledge of her inexperience *650 as a drug officer. It is the function of the jury, and not that of the appellate court, to make such credibility assessments. Hunter, supra. When viewed in the light most favorable to the state, Rainwater's identification is, beyond a reasonable doubt, sufficient proof of Graham's sale of cocaine on the two occasions. Accordingly, we reject this argument.

EXCESSIVE SENTENCE
Graham also complains that the concurrent twenty-, fifteen- and five-year sentences are constitutionally excessive given his mental, medical, family and criminal history and that there is no justification for the disparity in the two distribution sentences.[4]
For the distribution convictions, Graham faced minimum five-year and maximum thirty-year hard labor sentences, the first five years of which were to be without benefit of parole, probation, or suspension of sentence. La. R.S. 40:967(B)(4)(b). On the possession of cocaine conviction, Graham faced a maximum five-year sentence with or without hard labor. La. R.S. 40:967(C)(2).
Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992).
We affirm the imposed sentences. Because Graham failed to raise the issue of his mental capability in his motion to reconsider sentence, he is precluded from now raising this issue on appeal. La. C.Cr.P. art. 881.1.
Regarding the remaining mitigating factors, there is no requirement that the trial court give specific matters any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.03/01/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.02/02/01), 783 So.2d 385. Clearly, the trial court heard evidence regarding Graham's medical condition. Certainly, the court was not required to find Graham's disability a persuasive mitigating condition considering that his physical condition did not stop Graham from selling cocaine. State v. Nelson, 34,077 (La.App.2d Cir.12/06/00), 775 So.2d 579; State v. Jones, 31,569 (La.App.2d Cir.12/09/98), 724 So.2d 810. Clearly, too, the court considered the testimony of Graham's mother which revealed his personal history including the fact that Graham is the father of two sons aged twenty-eight and nine. Acknowledging that in every incarceration situation hardship results to dependents, the court rejected this information as compelling mitigation.
The record before us shows that this mature offender sold cocaine to Rainwater on two occasions. Interestingly, at the time of his arrest, a large number of individuals were gathered in his yard where a large amount of cocaine was eventually seized. Indeed, even on that date, Graham admitted to possessing cocaine for personal use. These facts, as the trial court noted, strongly suggest that Graham was engaged in the business of distributing cocaine. Graham admitted to a previous conviction for a drug offense. Under these circumstances, we cannot find that the imposed sentences shock the sense of justice.
The maximum sentence imposed upon Graham for the possession of cocaine is appropriate for this offender whose drug use had obviously extended beyond personal use. As such, Graham qualifies as the worst type of possession offender.
*651 With Graham's distinct propensity toward drug activity and obvious failure to be rehabilitated by previous punishment, we find the two midrange sentences imposed on the distribution convictions appropriate for this offender who sought to make a profit through illegal activity and subjected small children to his escapades. Likewise, we find no error in the variance in the distribution sentences. The facts of record reveal that Graham distributed a larger amount of cocaine in the second sale than the first. These facts alone support the trial court imposition of a larger sentence on the second count. Moreover, there is no jurisprudential or statutory requirement that the trial court impose identical sentences for different acts of distribution arising from a series of events. Under these circumstances, we discern no constitutional error in the composite twenty-year sentence imposed for the dual sale of crack cocaine and for the possession of cocaine.

INEFFECTIVE ASSISTANCE OF COUNSEL
In a pro se brief, Graham argues that he received ineffective assistance of counsel due to his trial counsel's failure to seek the disclosure and trial testimony of the confidential informant who participated in the May 17, 1999 sale.
Ordinarily, such claims are more properly presented by application for post-conviction relief. State v. Milligan, 28,660 (La. App.2d Cir.12/11/96), 685 So.2d 1127, writ denied, 97-0379 (La.06/30/97), 696 So.2d 1005; State v. Gipson, 28,113 (La.App.2d Cir.06/26/96), 677 So.2d 544, writ denied, 96-2303 (La.01/31/97), 687 So.2d 402. In the interest of judicial economy, however, the issues may be resolved on direct appeal if the record contains sufficient evidence pertaining to the matter. Id.
In alleging ineffective assistance of counsel, a defendant must satisfy a two-pronged test by showing, first, his attorney's performance to be so deficient as to deny him the "counsel" guaranteed by the Sixth Amendment; and second, that those errors are so serious as to deprive the accused of a fair trial, i.e., one with a reliable result. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to prevail under the Strickland test, Graham must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Gipson, supra. Also, a reviewing court must give great deference to the trial attorney's judgment, tactical decisions and strategy, strongly presuming the accordance of reasonable professional assistance. Strickland, supra; Gipson, supra.
Specifically, Graham argues that the informant's participation in the drug transaction entitled him to disclosure of the informant's identity which may have enabled him to prepare a viable defense and allowed him to cross-examine the witness, perhaps resulting in a different outcome of the case.
Initially, we are constrained to reject this argument as it relates to the convictions for distribution of cocaine on May 27, 1999 and for possession of cocaine on May 28, 1999. Clearly, the confidential informant played no role in those events and could not have assisted Graham in his defense or affected the outcome of the convictions.
We reach the same conclusion regarding the May 17th transaction. A confidential informant's identity is privileged, absent exceptional circumstances. Although the privilege is not absolute, courts use a balancing test for determining when the confidential informant's name must be revealed to the defense. State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). *652 Under this test, the public interest in protecting the flow of information must be balanced against the individual's right to prepare his or her defense. When the accused shows that disclosure of the confidential informant's identity is essential for his or her defense, the identity must be revealed. However, the burden rests with the accused to set forth concrete reasons why the identity of the informant is crucial to the defense. The accused must convince the court that the informant may be able to give testimony which is necessary to a fair determination of the issue of guilt or innocence. Id. When an informant has played a crucial role in the criminal transaction, and when his or her testimony is necessary to insure a fair trial, disclosure of the identity of the informant should be ordered. Id.
In the present matter, we find Graham's alleged entitlement to the identity of the confidential informant unfounded. The evidence shows that the confidential informant did not participate in the transaction but merely acted as a bystander. Our courts have consistently held that merely introducing a defendant to an undercover agent is not sufficient participation by the informant to warrant revelation of his identity. Further, the presence of the informant with the officer and the defendant during a criminal transaction is not sufficient participation in the criminal activity to warrant disclosure of the informant's identity. State v. Henderson, 31-236 (La.App.2d Cir.10/28/98), 721 So.2d 85 and cases cited therein, including, State v. Coleman, 97-2802 (La.04/24/98), 713 So.2d 440; State v. Davis, 411 So.2d 434 (La. 1982);[5]State v. James, 396 So.2d 1281 (La.1981).
Certainly, this jurisprudence provides a valid and reasonable basis for counsel's failure to timely seek the identity of the confidential informant involved in this case. Likewise, it is entirely plausible to conclude that trial counsel's decision not to subpoena or call the witness at trial would qualify as a strategical decision, considering the obvious risk that the informant could identify Graham as the perpetrator of the offense. That this was a trial strategy is further supported by defense counsel's attempt in closing argument to raise a reasonable doubt as to Graham's guilt based upon the "missing" informant's testimony. The circumstances provide a more than adequate professional basis for counsel's actions. We, therefore, conclude that Graham has failed to demonstrate constitutionally deficient performance by his counsel and, accordingly, reject this argument.

CONCLUSION
For the foregoing reasons, Graham's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] It appears that Graham's appeal was untimely filed according to La.C.Cr.P. art. 914. In the interest of judicial economy, we will entertain the appeal noting that Graham would be entitled to reinstatement of his appellate rights pursuant to State v. Counterman, 475 So.2d 336 (La.1985). State v. Owens, 32-640 (La.App.2d Cir.10/27/99), 763 So.2d 628, writ denied, XXXX-XXXX (La.06/16/00), 764 So.2d 963.
[2] Graham concedes his guilt on the possession conviction.
[3] Of course, because Graham failed to contest the admissibility of the identification, he is precluded from challenging the suggestiveness of the photographic identification. Hunter, supra. Accordingly, any issue of whether Rainwater was pressured to identify Graham as the perpetrator goes to the weight of the evidence.
[4] Graham acknowledges adequate La.C.Cr.P. art 894.1 compliance by the trial court.
[5] Notably, this case and the other cases cited by Graham in support of his argument are misplaced and actually support the actions of his counsel.