GASKINS, J.
The defendant, Billy Ray Anderson, was originally charged with two counts of distribution of cocaine. Following a jury trial, he was convicted of one count of distribution of cocaine and one count of attempted distribution of cocaine. On the former conviction, he was sentenced to 25 years at hard labor, the first two years to be served without benefit of parole, probation or suspension of sentence. On the latter conviction, he was sentenced to 12 ½ years at hard labor, with the first year to be served without benefits. The trial court ordered that the sentences be served concurrently. The defendant appealed. We affirm the defendant’s convictions and sentences.
FACTS
In 2009, the West Carroll Parish Sheriffs Office (WCSO) launched an operation to make undercover narcotics arrests in the parish. Deputy Victor Smith was the chief narcotics officer for the WCSO; he and his supervisor, Chief Deputy Kenneth Green, were the main officers involved in the operation. According to Deputy Smith, since the dealers would not sell narcotics to someone with whom they were unfamiliar, the WCSO had to use confidential informants (CIs) who were known to the local drug dealers rather than deputies working undercover.
One such Cl was Kenneth Navarro. Although not a law enforcement officer, Navarro signed an agreement with the WCSO to cooperate with the agency and participate in anti-narcotics operations. He engaged in several of these operations with different sellers; however, the authorities would not arrest the seller immediately after the purchase because doing so would give [ ¡.away Navarro’s association with the police and other sellers would not deal with him.
Navarro bought cocaine from the defendant on two occasions in March 2009. The first sale by the defendant to Navarro occurred on March 24, 2009. Navarro first made contact with the defendant, then notified Deputy Smith. The deputy met Navarro at a secluded location and conducted a pat-down search of the Cl for narcotics. Deputy Smith gave Navarro $70 to buy *180 cocaine; later Navarro would be paid $50 for his services. In addition, the deputy gave Navarro a small video camera concealed in a shirt to record the transaction.
Navarro drove to meet the defendant at a carwash in his girlfriend’s car. According to Navarro, the defendant came to the driver’s side window and handed him four white rocks. A man’s hand can be seen on the video handing Navarro four white rocks in exchange for the money, but the seller’s face cannot be seen. The two discussed the procedure for making future drug purchases and whether the seller knew Navarro’s family; the seller’s voice can be heard during the conversation. The seller told Navarro that if he didn’t see the burgundy truck, don’t stop, and then he told Navarro the location of his house; thereafter, Navarro left.[1]
After the purchase, Navarro and Deputy Smith met. Navarro gave the four rocks to the deputy, who sealed them in an evidence bag.
laThe next day, Navarro contacted Deputy Smith again and said he had arranged to make another purchase of drugs from the defendant. Again, the two met at a secluded location where the deputy searched Navarro before giving him the video camera and $20 for drugs.[2] On this date, unbeknownst to Deputy Smith, Navarro was accompanied by a woman he knew as Brandy.
Navarro drove to the defendant’s home. A man that Navarro did not know came up to the car, and the two discussed some engine work that was being done in the defendant’s yard. The man then asked what Navarro wanted, to which Navarro replied a “dove,” and “hard,” and then 20, meaning $20 of crack. The man left, and Navarro yelled out to someone that he would have helped them pull the engine from the vehicle if he had known they were doing that. According to Navarro, the defendant then approached the car. A man’s voice can be heard on the recording along with Navarro’s, saying something about “... right back.” Then, Navarro said, “I asked him if he wanted me to give it to you.”
According to Navarro, he gave the defendant $20; then the defendant went into his house for a while. There is a delay of many minutes on the recording of the incident, and then the camera turned off and back on again. Navarro said that the defendant returned with the crack, although no part of the transaction is recorded. However, when the camera came back on, Navarro handed something out through the passenger side window (which he later identified as spark plugs) and spoke with someone he called “the | ¿Godfather,” a name that Navarro said he called the defendant. Later, as he drove away, Navarro showed the camera a single white rock in his hand, and he said, “This is what he gave me.... it was the same person from ... yesterday.” Again, the seller’s face is never seen on the video recording.
When Navarro met with Deputy Smith, he gave the officer a single white rock appearing to be crack cocaine, which the deputy sealed in an evidence bag.
In neither instance did Deputy Smith observe all of Navarro’s movements or either of the transactions. All of the drug evidence that Navarro gave to the deputy was tested and determined to be cocaine.
*181 The defendant was arrested in April 2010 and charged with two counts of distribution of cocaine. At trial, Navarro identified the defendant as the person who sold cocaine to him on both occasions. The jury convicted the defendant as charged on one count of distribution of cocaine and returned a responsive, lesser verdict of guilty of attempted distribution of cocaine on the second charge. The defendant’s motions for new trial and post verdict judgment of acquittal were denied.
The trial court imposed concurrent sentences of 25 years at hard labor, the first two years to be served without benefit of parole, probation or suspension of sentence, for the distribution conviction and 12 ½ years at hard labor, with the first year to be served without benefits, for the conviction of attempted distribution. The defendant’s oral motion to reconsider sentence was denied.
|fiThe defendant appealed, asserting five assignments of error. Among these assignments are claims of insufficient evidence and excessive sentences.
SUFFICIENCY OF EVIDENCE
The defendant challenges the sufficiency of the evidence supporting his convictions for distribution of cocaine and attempted distribution of cocaine.

Law

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied,, 2009-0310 (La.11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing sufficiency of |fievidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Holden, 45,038 (La.App.2d Cir.1/27/10), 30 So.3d 1053, writ denied, 2010-0491 (La.9/24/10), 45 So.3d 1072.
It is not the function of an appellate court to assess credibility or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for *182 a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
To present sufficient evidence of distribution of a controlled dangerous substance (CDS), the state must prove the following elements: (1) delivery or physical transfer of the CDS to its intended recipient; (2) |7guilty knowledge of the CDS at the time of the transfer; and (3) the exact identity of the CDS. State v. Ashley, 44,861 (La.App.2d Cir.10/28/09), 26 So.3d 193; State v. Winslow, 45,414 (La.App.2d Cir.12/15/10), 55 So.3d 910, writ denied, 2011-0192 (La.6/17/11), 63 So.3d 1033.

Discussion

The evidence presented to the jury was plainly sufficient to prove beyond a reasonable doubt the commission of the offenses of conviction; Navarro testified that he purchased cocaine on both occasions. The only question of substance is whether the jury was manifestly erroneous in crediting Navarro’s testimony that these sales occurred or that the defendant was the seller. The jury’s verdicts in this case rest very heavily on their decision to credit Navarro’s testimony that the defendant is the man whose face cannot be seen on any of the video recordings. Certainly there are many instances where Navarro’s testimony can be criticized; in particular, in the second video, he makes a remark about taking a pill.
Nevertheless, the various difficulties with Navarro’s testimony are not the sort of internal contradiction or irreconcilable conflict with physical evidence that permit this court to intrude upon the province of the jury to accept his testimony as true. Nothing on the videotapes works to disprove the salient points in his testimony that he drove to two locations and purchased cocaine from the defendant at both of those places. The failure of the recording equipment to capture the seller’s face, while unfortunate, affects the weight that the fact finder might give Navarro’s testimony, but it does not in any way compel this court to reverse these verdicts that relied on Lthat testimony. The jury had the opportunity to hear Navarro testify live, and the defendant’s counsel conducted an effective and thorough cross-examination. Furthermore, additional support for Navarro’s testimony was found in his recorded conversations with the defendant wherein the defendant described where he lived and the vehicle he drove, as well as his work as an auto mechanic; all of these facts were independently verified through the testimony of a law enforcement officer who knew the defendant.
This assignment of error is without merit.
MISTRIAL
The defendant contends that the trial court erred in denying his request for a mistrial due to prejudicial remarks made by a police officer during his testimony.
During defense counsel’s cross-examination of Deputy Smith, he was asked what verification he had besides the information supplied by his CI. Deputy Smith answered: “The — through the investigation, it’s not just listening to the snitch. It’s— was known that Billy Ray Anderson was a drug dealer.” Defense counsel’s objection to this statement was sustained. During the ensuing bench conference outside the presence of the jury, defense counsel asked for a mistrial or an admonishment about the officer’s statement. The trial court refused to grant a mistrial but did admonish the jury to disregard the statement. On appeal, the defendant argues *183 that the comment referring to other crimes evidence was so prejudicial that the trial court erred in not granting his motion for a mistrial.
| ^Law
The law in this area is well settled. This court summarized it in State v. Smith, 43,136 (La.App.2d Cir.4/23/08), 981 So.2d 200:
La. C.E. art. 404(B) provides that evidence of other crimes, acts or wrongs is generally not admissible. La. C. Cr. P. art. 770(2) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. For purposes of article 770, a law enforcement officer is not considered a “court official,” and an unsolicited, unresponsive reference to other crimes evidence made by a law enforcement officer is not grounds for a mandatory mistrial under La. C. Cr. P. art. 770.
La. C. Cr. P. art. 771 sets forth permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made on grounds that do not require automatic mistrial under article 770. La. C. Cr. P. art. 775 also sets forth additional permissive grounds for mistrial. Under these articles, mistrial is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. Moreover, mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the accused. A trial court’s ruling denying mistrial will not be disturbed absent an abuse of discretion.
Even if a mistrial was warranted under article 770, 771, or 775, the failure to grant a mistrial would not result in an automatic reversal of defendant’s conviction, but would be a trial error subject to the harmless error analysis on appeal. Trial error is harmless where the verdict rendered is “surely unattributable to the error.” (Internal citations omitted.)
Further, La. C. Cr. P. art. 771 provides that the court shall promptly admonish the jury to disregard a remark or comment, on motion of the defendant or the state.
| loDiscussion
Deputy Smith’s remark was not so prejudicial to the defendant that he could not thereafter obtain a fair trial. The remark was not deliberately elicited by the prosecutor; in fact, the witness made the comment during cross-examination by defense counsel. The witness was offering an explanation of the investigation of the defendant in the first instance and the presence or absence of other evidence to confirm Navarro’s testimony. The deputy’s statement was only a single incident of improper testimony, not part of a pattern designed to unfairly prejudice the defendant with inadmissible evidence, and after the admonition, the trial continued with the presentation of relevant admissible evidence. In light of the record as a whole, the trial court acted within its discretion to admonish the jury rather than grant a mistrial.
This assignment of error is without merit.
EXCESSIVE SENTENCES
The defendant argues that the trial court abused its discretion in sentencing him.

*184
Law

According to La. R.S. 40:967, the sentencing exposure for distribution of cocaine is two to 30 years at hard labor, with the first two years being without benefit of parole, probation, or suspension of sentence. The court may also impose a fine of not more than $50,000. The penalty for conviction of attempted distribution of cocaine is imprisonment and a possible fine not to exceed one-half of the maximum punishment for 1 n distribution “in the same manner as for the offense planned or attempted.” La. R.S. 40:979.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Egan, 44,879 (La.App.2d Cir.12/9/09), 26 So.3d 938.
The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
112Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lathan, supra.

Discussion

The defendant argues that the trial court failed to give adequate consideration to the mitigating factors in the record, such as his steady employment history, and the possibility that the goals of rehabilitation and punishment could be best accomplished by less severe sentences.
Review of the record reveals that in imposing sentence, the trial court considered both mitigating and aggravating factors in great detail. On the one hand, the defendant was a 50-year-old married father with a good work history who had the support of his family and had been injured in a car accident. On the other hand, he had an extensive criminal history that included a 1980 simple burglary conviction and a 1991 conviction for felony possession of a firearm by a convicted felon. Among his various misdemeanor offenses were two 1995 charges for battery of a police officer. While he denied selling drugs, he admitted in the presentence investigation report that he was using them.
*185 11sIn tailoring the sentences to this defendant, the trial court considered the seriousness of the present offenses and the likelihood that he would continue his criminal activities if given lesser sentences. Based upon the entirety of the record, we cannot say that the sentences imposed by the trial court shock our sense of justice. See and compare State v. Edwards, 45,314 (La.App.2d Cir.6/23/10), 42 So.3d 449, in which this court affirmed a 28-year sentence for distribution of cocaine for a similarly situated offender who was in worse health than the defendant in the instant case.
This assignment of error lacks merit.
INEFFECTIVE ASSISTANCE OF COUNSEL
The defendant contends that the performance of his trial counsel was so deficient that it deprived him of his constitutional rights to counsel and to a fair and impartial trial.

Law

In alleging ineffective assistance of counsel, a defendant must satisfy a two-pronged test by showing, first, his attorney’s performance to be so deficient as to deny him the “counsel” guaranteed by the Sixth Amendment, and second, that those errors are so serious as to deprive the accused of a fair proceeding, i.e., one with a reliable result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Gipson, 28,113 (La.App.2d Cir.6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402. In order to prevail under the Strickland test, the defendant must demonstrate a reasonable probability that, but for Incounsel’s unprofessional errors, the result of the proceedings would have been different. State v. Gipson, supra.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (PCR) in the trial court rather than by appeal. This is because PCR creates the opportunity for a full ev-identiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139, writ denied, 2007-2190 (La.4/4/08), 978 So.2d 325.
However, when the record is sufficient, the court may consider the issue on direct appeal in the interest of judicial economy. State v. Leger, 2005-0011 (La.7/10/06), 936 So.2d 108, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007); State v. Robinson, 45,820 (La.App.2d Cir.1/26/11), 57 So.3d 1107. The appellate court does not sit to second-guess strategic and tactical choices made by trial counsel. State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000); State v. Russell, 46,426 (La.App.2d Cir.8/17/11), 73 So.3d 991.

Discussion

The defendant argues that his trial counsel was deficient because he failed to object when the prosecutor characterized the defendant as a “drug dealer” during the state’s opening statement. He also complains that defense counsel failed to object to the testimony of Deputy Smith about the taped recordings of the transactions, which were very difficult to hear.
| T 5As to the prosecutor’s opening statement, we find that the defendant’s argument lacks merit. It would have been pointless for defense counsel to object to the prosecutor’s characterization of the defendant as a drug dealer when that is what the prosecutor argued that the evidence would show. The jury was properly in *186 structed that argument is not evidence, and the defendant’s trial counsel did a commendable job of challenging the state’s case and the testimony of the CI.
As to defense counsel’s failure to object to Deputy Smith’s testimony about the recordings, we likewise find no merit. The recordings show what they show— which is not a great deal — and some of the audio is difficult to understand; however, nothing in Deputy Smith’s testimony supplied the jury with facts that they could not discern themselves when they considered the recordings. The record shows that the jury did have a full opportunity to view and hear the recordings of these transactions, and the defendant’s cross-examination of the witnesses about the recordings was not limited in any way.
The defendant has shown neither serious error nor prejudice because of his attorney’s conduct. According, we find that this assignment of error is without merit.
CUMULATIVE ERROR
In his final assignment of error, the defendant contends that the cumulative errors in this case denied him his right to a fair trial. However, we have carefully reviewed each of the defendant’s assignments of error and have determined that none constitute reversible error. The cumulative effect Lfiof assignments of error that themselves are without merit does not warrant reversal of a conviction. State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218, 239; State v. Crandell, 43,262 (La.App.2d Cir.6/18/08), 987 So.2d 375, writs denied, 2008-1582 (La.3/27/09), 5 So.3d 139 and 2008-1659 (La.3/27/09), 5 So.3d 140, cert. denied, — U.S.-, 130 S.Ct. 183, 175 L.Ed.2d 115 (2009).
This assignment of error has no merit.
CONCLUSION
The defendant’s convictions and sentences are affirmed.
AFFIRMED.

. Information presented at trial established that the defendant drove a burgundy truck and that he lived at the mentioned location. Additionally, a law enforcement officer who had known the defendant for at least 16 years testified that he was familiar with the defendant’s voice and identified the voice on the recordings as the defendant’s.

. Navarro was later paid $60 for his services.