Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,345-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

WILLIAM MUSE                                Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 53,593

Honorable Thomas Wynn Rogers, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Douglas Lee Harville

WILLIAM MUSE                           Pro Se

JEFFREY M. LANDRY                      Counsel for Appellee
Attorney General

CHRISTOPHER N. WALTERS
Assistant Attorney General

* * * * *

Before COX, THOMPSON, and MARCOTTE, JJ.

**THOMPSON, J.**

William Muse was convicted by a unanimous jury of distribution of cocaine and distribution of marijuana, and after being adjudicated a third felony offender, he was sentenced to 20 years at hard labor for each charge, with the sentences to be served concurrently. He now appeals, arguing his sentences are excessive and alleging various other issues with his convictions. For the reasons set forth below, we affirm his convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

On March 8, 2016, Sgt. Rocky Kennedy and Capt. Kenneth Bryan with the Union Parish Narcotics Division met with a confidential informant ("CI") after receiving a tip from the CI that the defendant, William Muse ("Muse"), agreed to meet and sell him a controlled dangerous substance ("CDS"). The officers had not met with the CI prior to March 8, 2016 but, at the meeting, had him sign a CI agreement with them, as is frequently the case in such matters, in exchange for a request for leniency of the CI's pending drug charges in another matter. They searched the CI's person, his car, and his mother-in-law, who was driving him, and found no contraband. The CI was equipped with both audio and video surveillance equipment in order to monitor the exchange and was given $140 from the officers to purchase the drugs from Muse.

The CI called Muse and told him that he was on the way to the agreed upon meeting spot. The CI and his mother-in-law drove to a convenience store, and the police followed him in their own vehicle. The officers parked about 200 yards away from the meeting location and monitored the meeting

on the audio surveillance equipment. They also took turns watching the exchange through binoculars.

The video surveillance tape showed the CI talking with Muse and then entering into his vehicle. The CI then speaks with an unidentified woman in Muse's vehicle. The video reflects that the CI gives Muse the $140 and receives a white pill bottle containing what was later identified as cocaine. As he is exiting the vehicle, Muse hands him a cigar package containing what was later identified as marijuana. The CI returned to his car and drove to meet the police officers in a pre-designated area. The officers confiscated the drugs the CI purchased from Muse and then searched the CI, his mother-in-law, and the vehicle for any other contraband, finding nothing. The officers later testified that the CI continued to work for them in exchange for leniency for other drug charges. By the time of Muse's trial, however, the CI had absconded and did not testify at the trial.

The drugs were sent to the crime lab and tested, which revealed that the pill container contained cocaine and the cigar wrapper contained marijuana. After the drugs were tested, Muse was arrested for distribution of CDS in violation of La. R.S. 40:966(A)(1) and 40:967(A) respectively. At his arraignment, Muse pled not guilty and elected to represent himself *pro se*.[1] The record reveals that the State offered Muse a plea deal at five years hard labor with all but the first two years suspended with three years of supervised probation. Muse rejected the plea offer and proceeded to trial.

---

[1] We note that Muse is experienced as a *pro se* party, having filed over 100 motions and pleadings in the record before us, totaling well over 1,000 pages of pleadings in total.

After extensive pretrial motions, including a motion by Muse to recuse the entire district attorney's office (which later self-recused), a five-day trial was held in Ruston, Louisiana on November 26, 2018, during which the entire audio and video surveillance recordings were played for the jury. At the conclusion of the trial, the jury returned unanimous guilty verdicts on both charges. Muse then filed a post-verdict judgment of acquittal and a motion in arrest of judgment, both of which were denied by the trial court after a hearing. Muse also filed a motion for new trial, which was denied.

At his original sentencing hearing, Muse was sentenced to 10 years at hard labor on each count, with those sentences to run concurrently with each other. Due to his prior felony convictions, the State then moved to have him adjudicated as a third felony habitual offender, and after a habitual offender hearing the trial court resentenced Muse to 20 years at hard labor on each count, to be served concurrently and without the benefit of probation or suspension of sentence. This appeal followed.

## DISCUSSION

Muse, through his appointed appellate counsel and in his own *pro se* brief, has asserted seven assignments of error, which will be discussed individually below.

**First Assignment of Error: There was insufficient evidence to prove beyond a reasonable doubt that Muse distributed marijuana and cocaine.**

Muse first argues the State failed to sufficiently prove he was guilty of distribution of narcotics. Muse asserts that the surveillance video does not actually depict Muse handing or providing the CI with anything. Moreover, defense counsel maintains there were other outside factors which negate a

3

guilty verdict; namely, that 1) the CI was seeking leniency for his own charges, and may have had motive to essentially frame Muse; 2) the CI's mother-in-law, who drove the CI to the meeting point, was unaccounted for when the CI met with Muse, as she left the car at one point; 3) the camera did not consistently face the CI as he returned to meet with officers; 4) the CI interacted with at least one other person aside from Muse; and 5) the CI failed to testify so the State relied on testimony from officers to interpret the recording. In sum, Muse is arguing that there was a possibility that the CI switched what Muse gave him for the cocaine and marijuana confiscated by the officers, in an alleged attempt to gain favor with the officers and earn leniency when he would eventually be sentenced on his pending charges.

The standard of review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Berry*, 53,742 (La. App. 2 Cir. 3/3/21), 314 So. 3d 1110. This standard has been legislatively embodied in La. C. Cr. P. art. 821 and does not provide the appellate court with a vehicle to substitute its own appropriate of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *Berry*, *supra*. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *Berry*, *supra*; *State v. Eason*, 43,788 (La. App. 2

4

Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09), 23 So. 3d 913, *cert. denied*, 561 U.S. 1013, 130 S. Ct. 3472, 177 L. Ed. 2d 1068 (2010).

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *Berry*, *supra*; *State v. Speed*, 43,786 (La. App. 2 Cir. 1/14/09), 2 So. 3d 582, *writ denied*, 09-0372 (La. 11/6/09), 21 So. 3d 299.

To present sufficient evidence of distribution of a CDS, the state must prove the following elements: (1) delivery or physical transfer of the CDS to its intended recipient; (2) guilty knowledge of the CDS at the time of transfer; and (3) the exact identity of the CDS. *State v. Sullivan*, 51,180 (La. App. 2 Cir. 2/15/17), 216 So. 3d 175; *State v. Anderson*, 46,724 (La. App. 2 Cir. 11/2/11), 78 So. 3d 176. Muse challenges the State's evidence only as to the first element. The record reflects that Sgt. Kennedy and Capt. Bryan testified that after meeting with the CI and his mother-in-law, they searched them both and the vehicle they were driving. They determined that neither person nor the vehicle contained contraband, and they gave $140 to the CI to purchase the drugs from Muse. The CI was equipped with surveillance

5

equipment, including both audio and video, and the police officers followed the CI to the store.

The officers testified that they reviewed the surveillance video and determined that the CI was seen getting into Muses' vehicle and the containers for the cocaine and marijuana can clearly be seen. They admitted that the CI did briefly speak to another woman before speaking to Muse and that the CI's mother-in-law was not always seen in the vehicle. The record reflects that Muse questioned both officers regarding the possibility that the CI switched whatever Muse gave him for the drugs he provided to the officers.

When viewed in the light most favorable to the prosecution, we cannot find that it was unreasonable for the jury to believe the officers' testimony and other evidence and determine that Muse sold drugs to the CI. The possibility that the CI switched whatever was given to him by Muse for the drugs was explored at trial in front of the jury, and the members of the jury clearly considered and discarded this theory before finding Muse guilty. We must accord great deference to the jury's decision to accept the testimony of the police officers. *Berry*, *supra*. They heard and considered Muse's argument that the CI could have switched the drugs, heard the officers' testimony, and viewed the surveillance video. Although the CI did not testify at trial, there was sufficient evidence presented to the jury for it to have found Muse guilty of distribution of cocaine and marijuana. As such, this assignment of error is without merit.

**Second Assignment of Error: Muse's sentences are excessive and serve no purpose.**

Muse argues that his 20-year sentences, set to run concurrently, are excessive and serve no useful purpose. Muse contends that the sentences are constitutionally excessive given his criminal history, which includes felony convictions for the unauthorized use of a motor vehicle and possession with intent to distribute cocaine, and that he is only 36 years old and has an established work history. Moreover, Muse argues that because the drugs in this matter only involved 2 grams of cocaine and 11 grams of marijuana, a downward departure in sentencing is warranted. The trial court apparently disagreed.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court complied with La. C. Cr. P. art. 894.1. *State v. Smith*, 433 So. 2d 688 (La. 1983). The trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, but the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. *Id.* The important elements the trial court should consider are the defendant's personal history, prior criminal record, seriousness of offense and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981). There is no requirement that specific matters be given any particular weight at sentencing. *State v. Sandifer*, 54,990 (La. App. 2 Cir. 4/5/23), 361 So. 3d 1079; State *v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v.*

7

*Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1, *citing State v. Bonanno*, 384 So. 2d 355 (La. 1980). The trial court has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Abercrumbia*, 412 So. 2d 1027 (La. 1982). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7.

The Louisiana habitual offender law, contained in La. R.S. 15:529.1, provided, in pertinent part:

> (3) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
>
> (a) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.

Any sentence by the trial court for a habitual offender must fall within the sentencing requirements of the habitual offender statute. The penalty for distribution of cocaine, as of the date of this offense, was a sentence of 2 to 30 years at hard labor, the first two years of imprisonment without benefit of parole, probation, or suspension of sentence, and a potential fine of not more than $50,000. Likewise, the penalty for distribution of marijuana was a sentence of 5 to 30 years at hard labor and a fine of not more than $50,000. Upon adjudication as a third felony offender, the offenses each carried a sentence of 20 to 60 years at hard labor without benefit of probation or suspension of sentence.

8

Here, after reviewing the factual basis for the convictions, the trial court addressed the aggravating and mitigating circumstances. The court specifically noted that Muse dropped out of school but received his GED, that he had been steadily employed until his incarceration and has received substance abuse treatment in the past. The court also noted his criminal history, including felony convictions for unauthorized use of a motor vehicle and possession of a schedule II CDS with intent to distribute. It also noted his misdemeanor convictions for theft, possession of marijuana, resisting an officer, domestic abuse battery, and interfering with a police officer. The court stated that Muse had two prior probations revoked for convictions and was on good time parole supervision when he was arrested in the current matter. The court specifically noted that it found an undue risk during the period of suspended sentence or probation that Muse would commit another crime. After considering the above circumstances and the minimum and maximum sentences for the two statutes under which Muse was convicted, the court sentenced Muse to the minimum of 20 years on each count, to run concurrently.

Review of the record discloses no abuse of discretion regarding the sentences imposed. The trial court articulated a sufficient basis for both sentences and clearly examined the PSI. The trial court imposed the minimum sentence on each charge under the statute for a third felony offender and ordered that they be run concurrently. The sentences imposed are tailored to the offender and the offense and do not shock the sense of justice. Moreover, we note that the record reflects that the State offered Muse a plea deal for the distribution of cocaine charge, which would have reduced his sentence to five years at hard labor with all but the first two

9

years suspended without benefits, and three years' supervised probation with credit for time served. Muse declined the plea agreement and was specifically warned by the trial court prior to trial that the State would seek a habitual offender finding and sentenced upon conviction. Considering all of the above, there is no showing that Muse's sentences are excessive. This assignment of error is without merit.

**Third Assignment of Error: The trial court committed reversible error by denying the motion for post-verdict judgement of acquittal.**

Muse argues that the trial court's ruling denying his motion for post-judgment acquittal was in error because the trial court's findings or conclusions were not supported by reliable evidence contained in the record, namely, the Union Parish Sheriff's Office policy manual. Muse objects to Capt. Bryan's use of a CI without getting prior approval from the sheriff, which he argues is in violation of the police manual, the Fourth Amendment, and due process of law. Muse further asserts that Capt. Bryan failed to seek a court order to apply for video surveillance prior to equipping the CI with video surveillance.

A motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the State, does not reasonably permit a finding of guilty. La. C. Cr. P. art. 821(B); *State v. McLaughlin*, 54,874 (La. App. 2 Cir. 3/1/23), 357 So. 3d 551. This is a question of legal sufficiency. *McLaughlin*, *supra*.

A detailed discussion of the sufficiency of the evidence in this matter can be found above. Additionally, the record reveals that Capt. Bryan testified numerous times over the course of this litigation that he was a supervisor over the narcotics department and that he had the authority

delegated from the Sheriff to confirm the use of a CI in any given case. Further, Louisiana courts have held that the use of electronic surveillance, including video surveillance, to secretly record a conversation with the consent of one of the parties to the conversation does not invade the privacy of the parties within the meaning of both the state and federal constitutions, and therefore the warrant requirement does not attach. *State v. Young*, 51,711 (La. App. 2 Cir. 1/18/18), 245 So. 3d 353, *writ denied*, 18-0309 (La. 11/14/18), 256 So. 3d 283; *State v. Montgomery*, 14-390 (La. App. 3 Cir. 12/17/14), 158 So. 3d 87, *writ denied*, 15-0088 (La. 11/16/15), 184 So. 3d 23.

Considering the above and having already found that the evidence presented at trial was sufficient for conviction, we find that the trial court did not err in denying the motion for post-verdict judgment of acquittal. This assignment of error is without merit.

**Fourth Assignment of Error: The trial court erred by granting the State's motion to recuse the entire district attorney's office.**

Muse argues that the trial court erred by granting the State's motion to recuse the entire district attorney's office because he had filed a lawsuit against employees of the district attorney's office.

La. C. Cr. P. art. 680 provides that a district attorney shall be recused when he:

> (1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
> (2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or

11

(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.

Further, La. C. Cr. P. art. 681 provides:

A district attorney may recuse himself, whether a motion for his recusation has been filed or not, in any case in which a ground for recusation exists. A motion to recuse the district attorney shall be in writing and shall set forth the grounds therefor. The motion shall be filed in accordance with Article 521, and shall be tried in a contradictory hearing. If a ground for recusation is established the judge shall recuse the district attorney.

When a district attorney is recused or recuses himself, the trial judge shall notify the attorney general in writing of the recusation. La. C. Cr. P. art. 682. The attorney general must then appoint a member of his staff or a district attorney of another district to act in the place of the recused district attorney. *Id.* The substitute appointed for the district attorney shall have all the powers of the recused district attorney with reference to the case. *Id.*

Here, the record reflects that the district attorney self-recused based on the civil lawsuit Muse filed against the district attorney and other members of his office. Moreover, Muse filed his own motions to recuse the district attorney's office and issued subpoenas of members of the district attorney's office related to his civil lawsuit. The record reflects that a hearing was held to discuss the motion to recuse as well as a litany of Muse's other filings; however, it appears that the trial court only mentioned to Muse that, despite the fact that Muse's other motions for recusal did not have an adequate basis, that the State had acquiesced to his motions, and self-recused. Neither Muse nor the State objected to this ruling. The trial court notified the Attorney General, who then appointed a member of his staff to try the matter, in accordance with La. C. Cr. P. art. 682.

12

Considering the facts of this case, we do not believe that the trial court erred in allowing the State to self-recuse. Both parties were given the opportunity to present facts and arguments to the district court, and we believe the court's ruling is supported by the record. *State v. Higginbotham*, 46,975 (La. App. 2 Cir. 4/25/12), 122 So. 3d 1, *writ denied*, 12-1718 (La. 5/24/13), 116 So. 3d 658. This assignment of error is without merit.

**Fifth Assignment of Error: The trial court erred by not granting a new trial.**

Muse argues that the trial court erred in denying his motion for a new trial because it previously denied his motion to disclose a governmental informant. Muse contends that he was prejudiced in his right to prepare and present a meaningful defense because he had a right to know the name of the government's informant when the informer participated in the illegal transaction.

A new trial shall be granted upon contradictory motion of any party when the judgment appears clearly contrary to the law and the evidence or when the party has discovered new evidence which he could not have obtained before or during trial. La. C.C.P. art. 1972. A new trial may be granted if there is good ground therefor. La. C.C.P. art. 1973. The denial of a motion for new trial is considered under the abuse of discretion standard of appellate review. *Pitts v. Louisiana Med. Mut. Ins. Co.*, 16-1232 (La. 3/15/17), 218 So. 3d 58; *Sullivan v. Brookshire Grocery Co.*, 54,535 (La. App. 2 Cir. 9/21/22), 348 So. 3d 872.

A confidential informant's identity is privileged, absent exceptional circumstances. La. C.E. art. 514; *State v. Broadway*, 96-2659 (La. 10/19/99), 753 So. 2d 801, *cert. denied*, 529 U.S. 1056, 120 S. Ct. 1562, 146

13

L. Ed. 2d. 466 (2000); *State v. Graham*, 35,184 (La. App. 2 Cir. 10/31/01),

799 So. 2d 645, *writ denied*, 02-0059 (La. 11/8/02), 828 So. 2d 1114. This

privilege is founded upon public policy that seeks to further and protect the

public interest and law enforcement by encouraging people to supply

information to the police by protecting their anonymity. *Roviaro v. United*

*States*, 353 U.S. 53, 59, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957); *State v.*

*Oliver*, 430 So. 2d 650 (La. 1983), *cert. denied*, 464 U.S. 997, 104 S. Ct.

495, 78 L. Ed. 2d 688; *State v. Mendenhall*, 40,986 (La. App. 2 Cir. 2/7/07),

948 So. 2d 1255. The defendant bears the burden of showing exceptional

circumstances which would require divulging a confidential informant's

identity, and the trial court has much discretion in deciding whether

disclosure is warranted. *State v. Coleman*, 97-2802 (La. 4/24/98), 713 So.

2d 440.

> This court stated in *Graham*, *supra*, that:

> Courts use a balancing test to determine when the confidential informant's name must be revealed to the defense. Under this test, the public interest in protecting the flow of information must be balanced against the individual's right to prepare his or her defense. When the accused shows that disclosure of the confidential informant's identity is essential for his or her defense, the identity must be revealed. However, the burden rests with the accused to set forth concrete reasons why the identity of the informant is crucial to the defense. **The accused must convince the court that the informant may be able to give testimony which is necessary to a fair determination of the issue of guilt or innocence.** When an informant has played a crucial role in the criminal transaction, and when his or her testimony is necessary to insure a fair trial, disclosure of the identity of the informant should be ordered.

 (emphasis added). Louisiana law is clear that a showing that the informant

participated in the crime constitutes exceptional circumstances requiring

disclosure. *State v. Cox*, 44,878 (La. App. 2 Cir. 12/9/09), 26 So. 3d 929,

*writ denied*, 09-2829 (La. 6/18/10), 38 So. 3d 320. However, the State is not

required to produce the confidential informant prior to trial for the sole reason to give the defendant access to him. *State v. Stallworth*, 98-2356 (La. App. 4 Cir. 10/21/98), 720 So. 2d 746. Once the informant is no longer confidential, he should be treated as any other witness subject to the same discovery rules. *Id.*

A review of the record reveals when Muse filed his original motion to disclose the name of the governmental informant in 2016, the State argued that the CI had received a threatening phone call and had seen Muse's girlfriend on his street. The State also argued that the CI was continuing to provide information on matters for law enforcement and naming him would potentially endanger him and his work with law enforcement. The trial court denied the motion to disclose at that time, after the State affirmed that it would provide the CI's name and criminal history to the defense prior to trial if the CI was called as a witness.

The record reflects that the CI's name was provided to Muse by the State. Additionally, the State made clear weeks in advance of the jury trial that the CI had absconded the area and would not be testifying at trial. Testimony from the officers involved made clear how the CI came to work for them and that he provided information to the officers in exchange for leniency on pending criminal charges. The jury was aware, via this testimony, that the CI had pending criminal charges.

At no point before or after trial did Muse assert that the CI on the audiovisual surveillance was unknown to him, and at no point during trial did Muse assert that the late disclosure of the CI's identity would impact his right to prepare a meaningful defense. Because the CI was not a witness, Muse had a great deal of latitude to question the officers about his

15

background and reliability. Based on the record before us, we cannot say that the disclosures about the CI kept Muse from a fair determination of the issue of his guilt or innocence. The trial court's denial of Muse's motion for a new trial was not an abuse of discretion. This assignment of error is without merit.

**Sixth Assignment of Error: The trial court abused its discretion by allowing the State to play the audio-visual evidence without Hill having testified.**

Muse argues that the video evidence of him selling drugs to the CI was highly prejudicial and unnecessary. He argues that the prejudicial effect of showing the video to the jury outweighed the probative value.

The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. *Succession of Moore*, 54,388 (La. App. 2 Cir. 3/30/22), 339 So. 3d 12, *writ denied*, 22-00973 (La. 10/4/22), 347 So. 3d 859. At trial, a party must make a timely objection to evidence that party considers to be inadmissible and must state the specific ground for the objection. La. C.E. art. 103(A)(1); La. C.C.P. art. 1635. On appeal, this court must consider whether the complained of ruling was erroneous and whether the error affected a substantial right of the party. *Moore*, *supra*. The determination is whether the error, when compared to the record in its entirety, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. If there is no substantial effect on the outcome, then a reversal is not warranted. *Moore*, *supra*; *Crisler v. Paige One, Inc.*, 42,563 (La. App. 2 Cir. 1/9/08), 974 So. 2d 125.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Surveillance films and videotapes have long been admissible as relevant evidence. *See*, *State v. Lacoste*, 237 So. 2d 871 (La. 1970); *State v. Davis*, 92-1623 (La. 5/23/94), 637 So. 2d 1012, *cert. denied*, 513 U.S. 975, 115 S. Ct. 450, 130 L. Ed. 2d 359 (1994). In fact, this court has stated:

> No evidence of a crime is more probative than a film or videotape of the offense and the exclusion of such evidence on grounds that it is more prejudicial than probative requires an extraordinary showing of prejudice.

*State v. Tolbert*, 30821 (La. App. 2 Cir. 8/19/98), 716 So. 2d 949, *writ denied*, 98-2562 (La. 1/15/99), 736 So. 2d 207.

In the present matter, the probative value of the surveillance video was extremely high and the danger of unfair prejudice was low. Muse had the opportunity to question the police officers about the video in front of the jury. Despite the lack of testimony from the CI, it was not an abuse of discretion for the trial court to allow the audio and video evidence of the drug deal to be shown to the jury. This assignment of error is without merit.

**Seventh Assignment of Error: The trial court erred in denying the motion for mistrial.**

Finally, Muse argues the trial court erred in denying his motion for a mistrial after the prosecution, in the presence of the jury, mentioned that Muse was on parole at the time the crime was committed. Muse argues that the jury was prejudiced by knowing that he was on parole and may have violated his parole by selling drugs to the CI. He contends that the trial

court's admonishment to the jury to disregard the statements could not cure the effect of the comment.

> La. C. Cr. P. art. 775 states:
>
> Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

Mistrial is a drastic remedy which is authorized only where substantial prejudice will otherwise result to the accused. *State v. Lewis*, 51,672 (La. App. 2 Cir. 11/15/17), 245 So. 3d 233. The determination of whether actual prejudice has occurred lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Id.* Even if a mistrial was warranted, the failure to grant a mistrial would not result in an automatic reversal of the defendant's conviction, but would be a trial error subject to the harmless error analysis on appeal. *State v. Givens,* 99-3518 (La. 01/17/01), 776 So. 2d 443; *Lewis*, *supra*. Trial error is harmless where the verdict rendered is surely unattributable to the error. *Lewis*, *supra*.

In the present matter, Muse objected to the prosecution's questions regarding his probation status at the time of the current incident. The trial court agreed, sustained his objections, and admonished the jury to disregard the statements. There is no indication that the jury did not follow the trial court's instructions. We find no abuse of discretion on the part of the trial court in denying the motion for mistrial, considering the surfeit of other evidence against Muse related to this drug transaction. This assignment of error is without merit.

18

## CONCLUSION

Muse was sentenced to the minimum sentence term for both convictions and has the added benefit of his sentences being ordered to run concurrently rather than consecutively. For the foregoing reasons, the convictions and sentences of William A. Muse are affirmed.

**AFFIRMED.**